ANDREW J. WILLIAMSON, Plaintiff

v.

PAUL W. HESS, Defendant

Civil No. 66-1978

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

May 19, 1979

285

286

JOHN E. STOUT, ESQ. (GRUNERT, STOUT, HYMES & MAYER), St. Thomas, V.I., *for plaintiff*

THOMAS K. MOORE, ESQ., St. Thomas, V.I., *for defendant*

HODGE, *Presiding Judge*

## MEMORANDUM OPINION

### I.

In this declaratory judgment action plaintiff, the employer, seeks enforcement of a covenant-not-to-compete which was contained in a June 30, 1977, employment contract with defendant, the employee. The defendant asserts that this noncompetition covenant is void and unenforce-

able because, among other things, it is contrary to public policy and is violative of the Virgin Islands Antimonopoly Law. Thus, the question presented is whether the covenant is void or unenforceable. For the reasons discussed in this opinion, the Court declares that the covenant is valid and enforceable.

## II.

The following chronology of events leading to the filing of this action constitutes the findings of facts as determined by the Court, based upon the testimony and exhibits of record.

Plaintiff has practiced veterinary medicine in the Virgin Islands since 1965. During this time, he has developed a successful practice with regular clientele and has established internal operating procedures, including administrative and surgical techniques, to properly serve his clients. Substantial goodwill has been generated by his practice and, consequently, he has been able to extend his services to Tortola, British Virgin Islands, on a part-time basis.

In 1974, defendant first came to St. Thomas from New York on vacation. At that time he was employed in New York as a veterinarian performing animal cancer research. It was during this vacation period that the parties first met through a mutual friend, and they subsequently discussed the possible future employment of defendant by plaintiff. Accordingly, on December 5, 1975, they signed their first of two employment agreements. The first agreement[1] provided, in part, that defendant would be employed on a trial basis for eighteen months, commencing January 1, 1976, and that upon termination he would not compete with plaintiff for three years in the entire U.S. Virgin Islands.

---

[1] Plaintiff's Exhibit No. 1.

288

The employment relationship commenced as agreed, but during and at the end of this eighteen-month trial period, plaintiff expressed his dissatisfaction with both the quality and quantity of services rendered by defendant. However, in order to afford defendant another opportunity to correct the deficiencies noted, the parties executed their second contract on June 30, 1977, which they termed "Extended Employment Agreement".[2] In this contract, the parties agreed, in part, that they would renew their employment relationship for another six months; that during this period, if their relationship proved to be compatible, a formal partnership would be formed; and that if they could not work compatibly, the relationship would terminate on January 1, 1978, and defendant would thereafter refrain from competing with plaintiff in the private practice of veterinary medicine for a period of three years on the islands of St. Thomas and St. John only.

Because of their continued incompatibility, the contract expired on January 1, 1978, without extension or a partnership agreement, thereby triggering the commencement of the three-year period of the covenant-not-to-compete in St. Thomas and St. John.

At that time, as now, there were six licensed veterinarians in the Virgin Islands, three of whom practiced privately on St. Thomas. Two additional veterinarians were employed by the V.I. Government. The Court finds that these were and are sufficient, at this time, to meet the community needs for veterinary services on St. Thomas and St. John. Besides, defendant was originally employed by plaintiff, not as an additional veterinarian, but as a substitute for plaintiff who had planned to take an extended period of study leave, which never materialized. Nevertheless, defendant became privy to all of plaintiff's business

---

[2] Plaintiff's Exhibit No. 2.

operations, including clients and client lists, and he had full access to plaintiff's practice techniques.

Prior to his initial employment with plaintiff, defendant had discussed the first contract with an attorney in New York, who advised him that the three-year covenant-not-to compete would be unenforceable. With that advice in mind, defendant executed the first contract, and later the Extended Employment Agreement, with no apparent intention of complying with that provision. Although the three-year period has not expired, defendant now threatens to establish his own private practice of veterinary medicine on St. Thomas, in direct competition with plaintiff. In addition, since the expiration of the extended contract, defendant has rendered private veterinary services to patients on St. Thomas who were clients of plaintiff's practice and who had met defendant as an employee of plaintiff. Defendant engaged in these instances of private practice although at the time he was employed as a lab technician with another employer.

Accordingly, plaintiff seeks a declaratory judgment as to the validity and enforceability of the restrictive covenant.

## III.

■ Where a noncompetition covenant is in issue, it is unenforceable unless it is ancillary or incidental to a lawful contract. See, generally, 54 Am.Jur.2d, Monopolies, Restraints of Trade and Unfair Trade Practices, § 514 (1956), and cases cited therein. Thus, the threshold to whether the contract executed by the parties is prohibited by law.

■ Among other contentions, defendant asserts that the contract is unlawful because it is violative of the Virgin Islands Antimonopoly Law (11 V.I.C. Ch. 29), and that, therefore, the restrictive covenant is unenforceable. I disagree. Nothing in Virgin Islands law prohibits an em-

290

ployer and employee from executing an employment contract, nor from inserting a covenant-not-to-compete in their employment contract. Indeed, the Virgin Islands antimonopoly law addresses itself to contracts among competitors which restrain trade because of monopolistic or oligarchic practices.

■ In this case, plaintiff has not conspired nor contracted with other veterinarians to monopolize the field of veterinary medicine. In fact, defendant does not even make such a claim. No evidence whatsoever was offered by defendant to substantiate this contention. Instead, the evidence shows that the field is wide open for any veterinarian, who qualifies under the provisions of 27 V.I.C. Ch. 3, to enter into such private practice throughout the Virgin Islands. Defendant, in substance, is urging the Court to hold that his exclusion from private practice on St. Thomas and St. John during the restrictive period, and nothing more, constitutes a monopolistic practice by plaintiff which violates the antimonopoly law, vitiates the employment contract, and thus renders null and void the noncompetition covenant. For the reasons stated above, I conclude that there is no merit to this contention.

## IV.

■ Defendant's main contention is that the covenant in question is void and unenforceable because it is contrary to public policy. But he paints with too broad a brush, for public policy is violated only where the covenant is unreasonable.

The covenant in issue states the following:

Dr. Paul W. Hess agrees that he will not individually or as a member of any firm, partnership, or association, directly or indirectly, be employed or engaged nor will he himself engage in the practice of veterinary medicine for a period of three (3) years from the date of the termination of this agreement on the islands of St. Thomas and St. John, U.S. Virgin Islands.

 Covenants restricting a professional from competing with a former employer are common and are generally acceptable. See, e.g., Karpinski v. Ingrasci, 28 N.Y.2d 45, 320 N.Y.S.2d 1, 268 N.E.2d 751 (1971); Cockerill v. Wilson, 51 Ill.2d 179, 281 N.E.2d 648 (1972); and Hall v. Willard & Wolsey, 471 S.W.2d 316 (Ky., 1971). In determining whether a restrictive provision is valid and enforceable, the courts are guided by the general rule that such a covenant is valid and enforceable only where it. is reasonable. This test of reasonableness must be applied to the following five factors:

1. Is the duration of the restriction reasonable?
2. Is the area of restriction reasonable?
3. Is the interest of the employer reasonably protected?
4. Is undue hardship imposed on the employee?
5. Is the public interest reasonably protected?

Restatement II, Contracts, § 515 et seq.; see also, Gelder Medical Group v. Weber, 41 N.Y.2d 680, 394 N.Y.S.2d 867, 363 N.E.2d 573 (1977). And this five-pronged test of reasonableness must be measured by the circumstances and context in which enforcement is sought. Reed, Roberts Assoc. v. Strauman, 40 N.Y.2d 303, 386 N.Y.S.2d 677, 353 N.E.2d 590 (1976), Annot. 62 A.L.R.3d 1014 (1975).

### A. Reasonableness as to Duration

 The defendant is restricted from competing with plaintiff in the private practice of veterinary medicine for a period of three years from the date of termination of their employment agreement. Having worked a total of two years for plaintiff and having become knowledgeable on a personal basis with plaintiff's clientele, the three-year period of restriction does not appear to be excessive. Moreover, the small population of St. Thomas and St. John, where contact among residents is a regular occurrence,

justifies the use of this time limitation. Indeed, our research discovered few covenants with less than a two-year restriction and many with restrictions of three to five years that were declared to be enforceable. Accordingly, the Court concludes that the three-year duration of this restrictive covenant is reasonable.

## B. Reasonableness as to Area

According to the provisions of the covenant in the extended agreement, the area of restriction is limited to St. Thomas and St. John only. This radius of restriction clearly excludes the island of St. Croix although it was originally included when the parties executed their first agreement. In addition, the Court concludes that the restriction is applicable only to the private practice of veterinary medicine; consequently, the covenant does not prohibit the defendant from practicing as a government veterinarian on St. Thomas and/or St. John, which would not be competitive with plaintiff's business.

In view of these limitations and in view of the relatively small size, low population and contiguous nature of the islands of St. Thomas and St. John, the Court concludes that the area of restriction is reasonable.

## C. Reasonableness as to Employer

In recognizing the necessity to protect the business interest of the employer, the parties contemplated through their restrictive covenant the protection of the business and goodwill of plaintiff from the direct competition of defendant in case of severance of the employment relationship. Given the small community size of St. Thomas and St. John, the exposure of plaintiff's clients and confidential business techniques to defendant, and the thirteen years involved in developing plaintiff's practice, perfecting his procedures, and maintaining his goodwill, the Court con-

cludes that the covenant does not excessively protect the employer and is therefore reasonable as to his business interests.

### D. Reasonableness as to Employee

Any compliance with or enforcement of a noncompetition covenant must necessarily result in some inconvenience to the former employee. Thus, the inquiry as to reasonableness must be directed to whether under the circumstances of this case the restriction imposed an undue hardship on the defendant.

Here, it is undisputed that defendant had no roots in the Virgin Islands prior to his employment by plaintiff. In addition, he is a young veterinarian who, because of the nationwide demand for such professionals, can readily establish himself in another jurisdiction, whether on the island of St. Croix, a mere 40 miles away, or on the U.S. mainland, especially with the financial resources which, according to his testimony, are at his disposal. Moreover, defendant has the option to seek employment on St. Thomas and St. John as a government veterinarian during the period of restriction.

Accordingly, the Court concludes that while some inconvenience will result, the enforcement of the restrictive covenant will not impose an undue hardship on the defendant.

### E. Reasonableness as to Public Interest

Because of the unquestionable public need for veterinary services, it must be determined whether enforcment of the restrictive covenant would adversely affect the public interest.

In this case, if allowed to establish his private practice, defendant would not be the only veterinarian serving the St. Thomas and St. John community. Indeed, the testimony established that there are at least three prac-

titioners presently rendering such veterinary services, and that various appointment slots are available for clients on a regular basis. Furthermore, if the covenant is enforced, defendant would still be eligible to render services to the public within the restricted area by seeking employment as a government veterinarian.

 Under these circumstances, it is clear that no harm would be done to the public by enforcing the non-competition covenant; therefore, its provisions are reasonable as to the public interest. Additionally, the public interest is served by not encouraging parties to ignore their contractual obligations, and by preserving the basic principle of freedom of contract. See Cogley Clinic v. Martin, 112 N.W.2d 678 (Iowa, 1962); J. D. Calamari and J. M. Perillo, The Law of Contracts, § 3 (1970).

* * *

For the foregoing reasons, the Court concludes that the covenant in question is not contrary to public policy.

## V.

Four additional contentions have been advanced by defendant in his effort to nullify the restrictive covenant. First, he contends that the original contract is invalid because of failure of consideration, and that therefore the extended agreement is also invalid. Second, he claims that he was terminated without cause and that such termination constituted a breach of the contract by the plaintiff. Third, he asserts that plaintiff bargained in bad faith with no intention of establishing a permanent relationship and that this bad faith should vitiate the contract. And fourth, he argues that the contract, having been drafted by plaintiff, was one of adhesion which should be construed against the plaintiff. After examining these contentions in the light of the facts and circumstances of this case, the Court con-

295

cludes that they are all without merit for the following reasons, enumerated separately.

## A. *Failure of Consideration*

The Court finds nothing in the evidence which would support the conclusion that the original contract was invalid for failure of consideration. This action was filed by plaintiff, seeking enforcement of the restrictive covenant in the second contract. Defendant has not filed a counterclaim regarding the first contract, nor has he contended that plaintiff is attempting to enforce the restrictive covenant of their original contract. Although the parties used the term "Extended Employment Agreement" when they executed the second contract, it is clear that different terms were negotiated, including increased salary and fringe benefits for defendant, and a narrowing of the area of restriction. Thus, the second contract is not dependent upon the enforceability of the original contract for its validity. But even if it did, all of the elements required to constitute a valid contract are present, including adequate consideration from the arms-length transaction. Defendant's contention that there has been a failure of consideration has no support whatsoever in the record, and therefore borders on the frivolous. Defendant collected his salary in full, capitalized on his fringe benefits, and had full access to plaintiff's practice. The fact that a partnership did not result from their relationship does not constitute failure of consideration.

## B. *Termination without Cause*

With regard to this contention, it is admitted that the contract does provide that either party could terminate the employment relationship for economic or other reasons. But it is undisputed that during the course of their association, serious differences existed between them, which

they unsuccessfully attempted to remedy. Thus, the evidence establishes that sufficient cause existed to justify a termination by either party. Moreover, defendant either ignores or overlooks the fact that the contract expired by its own terms on January 1, 1978, the date their employment relationship terminated, after timely notice of nonrenewal was given by plaintiff as required by the contract.

## C. Bad Faith

In alleging plaintiff's failure to bargain in good faith, defendant has contradicted himself. The testimony established that defendant admitted that prior to the signing of both contracts the parties met and discussed the terms and conditions of employment and eventual partnership; that as a direct result of their bargaining defendant obtained satisfactory salary and medical insurance provisions; that the other terms were agreed upon without coercion; and that each party understood what the noncompetition clause meant. The testimony also reveals that both parties tried to resolve the various differences which they encountered during the term of the original contract, in attempting to smooth the way for a long-term relationship. Indeed, the second contract was executed specifically to afford the parties an additional opportunity to resolve their conflicts and thereby effectuate a formal and permanent association.

These circumstances clearly justify and support the Court's conclusion that plaintiff made a good faith attempt to implement the terms of the contract. Obviously, the mere fact that one of the objectives of the contract was not achieved cannot constitute proof of bad faith by plaintiff.

Moreover, if any bad faith existed it was the action and intent of defendant who had planned to disregard

the restrictive covenant. This intent was formed prior to the execution of the original contract, when defendant's New York lawyer/friend advised him that the covenant would be unenforceable. By not revealing this information to plaintiff at the time the contract was being negotiated, defendant could certainly be accused of acting in bad faith.

## D. Adhesion Contract

An adhesion contract is one which is prepared by the party with excessive bargaining power who presents it to the other party for signature on a take it or leave it basis. J. D. Calamari and J. M. Perillo, The Law of Contracts, § 3 (1970). Generally no bargaining of the contract terms is permitted, and because the parties are not of equal bargaining strength, the Court construes all ambiguities in such contracts against the party who prepared the contract. Restatement of Contracts § 236(d) (1932); Restatement (Second) of Contracts § 232 (Tent. Draft Nos. 1–7) (1973).

No such conditions exist with respect to the contract in issue in this case. Here, although an initial version was drafted by plaintiff, the terms of the executed contract were not finalized until after the parties had engaged in various bargaining sessions. The Court is convinced that the parties were of equal bargaining strength, that plaintiff did not assume a take it or leave it posture, and that the parties negotiated final terms which were acceptable by both sides. Moreover, even if the contract is construed against the plaintiff and in the light most favorable to defendant, there is no ambiguity whatsoever in the contract or in the language of the restrictive covenant. Thus, no basis is established under this contention to render the contract or the covenant null and void.

298

## VI.

For the foregoing reasons, the Court declares that the noncompetition covenant contained in the extended employment agreement executed by the parties (a) is valid and enforceable on St. Thomas and St. John only, (b) is effective for the three-year period ending December 31, 1980, and (c) is applicable only to the private practice of veterinary medicine.

Judgment will be entered accordingly.

### DECLARATORY JUDGMENT

Having previously entered an oral decision in favor of plaintiff, this matter is before the Court on defendant's informal motion for written findings and conclusions, which was orally granted.

Plaintiff appeared with counsel, Grunert, Stout, Hymes & Mayer, John E. Stout, of counsel, and defendant appeared with counsel, Thomas K. Moore, Esquire.

The Court having entered its Memorandum Opinion herein, it is hereby,

DECLARED that the noncompetition covenant contained in the employment contract between the parties dated June 30, 1977 is VALID AND ENFORCEABLE and defendant is prohibited from engaging in the private practice of veterinary medicine on the islands of St. Thomas and St. John until December 31, 1980, and it is hereby,

ORDERED that costs and a contribution to attorney's fees will be awarded to plaintiff upon his submission of proof of costs and fees as required by law.