AUGUSTUS S. HOUGHTON and Others, Appellants, v. HECTOR W. THOMAS, Respondent, Appellant, Impleaded with JOHN H. TAYLOR and Others, Respondents.

First Department, May 6, 1927.

Partnership — accounting — action in equity to set aside accounting made on dissolution of law partnership on ground of fraud — claim that defendant rendered services for various clients and concealed fact that he collected fees for such services in addition to valuable corporate stock is not sustained — fraud not shown — counterclaim of defendant for share in counsel fee recovered in action which said defendant endeavored to defeat is dismissed — position taken in action estopped said defendant from making inconsistent claim in this proceeding.

This is an action in equity to set aside an accounting made on the dissolution of a law partnership. The action is based on fraud on the part of one of the defendants in failing to report and account for certain fees and securities alleged to have been received by him as a member of the firm. Said defendant had as a client, when the firm was organized, a corporation in which he was financially interested and this fact was known to the other members of the firm. The contention by the plaintiffs that the stock held by said defendant was issued to him in payment for legal services rendered during the existence of the firm cannot be sustained on the evidence. No express agreement to that effect was proven and the testimony negatives any implied agreement that said defendant was to render services for stock issued to him. Furthermore, the plaintiffs knew that said defendant held the stock at the time of the accounting and just prior thereto a bill was rendered to the corporation covering a period of four years during which the firm existed, and that bill was paid by the corporation in which said defendant was interested. The plaintiffs, therefore, failed to prove that said defendant fraudulently concealed property that should have been included in the firm assets at the time of the accounting.

A counterclaim by one of the defendants who intervened, in which he contended that on the dissolution of the firm it was agreed that a case then pending should be carried on by two new firms formed by members of the old and that there should be a division of the fees of which his firm was to receive one-third,

is dismissed. It appears that it was necessary to bring an action to recover the fees in that case and that said defendant appeared for the clients and testified for them in an effort to show that no fees should be paid. Under the circumstances, said defendant is estopped from now claiming a right to a portion of the fees recovered in that action.

APPEAL by the plaintiffs, Augustus S. Houghton and others, from so much of an interlocutory judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 27th day of April, 1926, upon the decision of the court rendered after a trial at the New York Special Term, as dismisses the complaint on the merits as against the defendants Hector W. Thomas and William J. Taylor Company, and also from that part of the judgment which grants interlocutory relief to the defendant Harry W. Mack on his second counterclaim.

Appeal by the defendant, Hector W. Thomas, from so much of said judgment as grants interlocutory relief to his codefendant Harry W. Mack on his second counterclaim.

*John E. Joyce* of counsel [*George A. Ferris,* attorney], for the plaintiffs.

*I. Maurice Wormser* of counsel [*Philip J. Dunn* and *Sumner B. Stiles* with him on the brief; *Philip J. Dunn,* attorney], for the defendant Hector W. Thomas.

*George A. Spiegelberg* for the defendant Harry W. Mack.

McAVOY, J. Judgment was rendered in this action dismissing the complaint against defendants Thomas and William J. Taylor Company. An interlocutory judgment was also rendered in favor of the defendant Mack on a second counterclaim pleaded by him against the plaintiffs and the defendant Thomas. Plaintiffs appeal from the judgment of dismissal of their complaint and from the judgment in favor of defendant Mack. Defendant Thomas also appeals from the judgment in so far as it grants relief to the defendant Mack against him.

The action is an equity suit and seeks a judgment setting aside an accounting made on the termination of a law partnership which consisted of the plaintiffs and the defendant Thomas. The ground alleged upon which the accounting is sought to be set aside is fraud of the defendant Thomas. The fraud upon which the complaint counts is that the partners represented to each other that the accounting as of December 31, 1924, was a full and true account of all the assets and moneys due to the firm and all assets and moneys that were the property of the partnership, and agreed among themselves that the account was correct. It is alleged, however, that during the partnership defendant Thomas rendered professional

HOUGHTON v. THOMAS. 417

services for various clients and concealed that fact from his partners, and during said period, and since then, has collected large sums of money and valuable corporate stocks, securities and other properties for such services, and has already collected for such services in the aggregate about $500,000. It is also alleged that at the time of the accounting Thomas made no mention of these concealed services, nor of the moneys and property that he had collected, and that in order to cheat and defraud the plaintiffs, he concealed from them the existence of the services and payment therefor, and that such fees collected for services were omitted from the account and never turned over to the partnership. The judgment demanded is that the account be set aside because of fraud, and that Thomas be required to account for all moneys, property and securities collected by him and concealed from the partnership; and that the defendant corporation be decreed to be a trustee for Thomas for all said stocks and securities held for his benefit.

The claim of the plaintiffs, in effect, is that at the time of the formation of the firm Thomas informed the plaintiffs that one of his principal clients was the William J. Taylor Company. He told them that he was financially interested in that company, and that, while it had made no difference while he was practicing law alone, he would in future have to separate the returns on his financial investment from his charges for his legal services; and he required permission to determine the amount of bills to be rendered to that company for services and the charges for rendering them. The other members of the proposed firm agreed to this arrangement, and they assert that upon the formation of the firm and throughout its existence he pretended that he had invested moneys in the William J. Taylor Company. As a matter of fact it appeared that he had received one-tenth of that company's stock, for which he had neither paid cash nor given any property. They say that from the time he received the stock up to the time of the dissolution of the partnership he rendered legal services to the William J. Taylor Company. Many of these services were not recorded in the firm books, and in some instances he made entries in the books. There were only a few cases wherein he rendered any bills for services to the Taylor Company or to William J. Taylor.

During the existence of the partnership the firm incorporated a company known as the Madison Avenue Offices, Inc., for which the William J. Taylor Company erected the Canadian Pacific Building and received for this erection all of the common capital stock of the Madison Avenue Offices, Inc. Although the firm was paid for services in connection with this incorporation and the

27

drawing of the building contract and the placing of the building loan, it is asserted that Thomas received stock in the Madison Avenue Offices, Inc., which eventually amounted to 1,000 shares and which he sold after the termination of the partnership for the sum of $364,500. Although they knew that he owned certain stock in the Madison Avenue Offices, Inc., he never informed them of the amount of the stock or the means by which he acquired it, but said that he had invested certain sums of money in that company and had made certain advances to assist in the construction of the building and the payment of the carrying charges. Because he actually paid no money whatever, gave no property in return for this stock and advanced no money to the company, and because, it is said, he sent no bills for certain services of the firm rendered to the Madison Avenue Offices, Inc., and since it is asserted that at the time of the making of the final accounting between plaintiffs and Thomas they were ignorant of these facts, the demand is that the account should be set aside and Thomas compelled to account for the value of the services which he rendered during the existence of the firm for which he made no charge, and for the profits that he made from his holdings in the William J. Taylor Company, and the profits that he made from the stock of the Madison Avenue Offices, Inc., which it is claimed he acquired without consideration, except the rendering of legal services by plaintiffs' firm.

We do not agree with the contention that plaintiffs have a right to such an accounting as is demanded, when they knew from the very beginning that Thomas held this stock in the William J. Taylor Company, and thereafter during the continuance of the firm that he acquired this Madison Avenue Offices, Inc., stock.

This firm was dissolved twice. The first dissolution took place in March, 1921, when John H. Taylor and Harry W. Mack left the firm, and the accounts of the firm were then adjusted as of March 1, 1921. The final dissolution of the firm and the final account took place in December, 1924. Just before the dissolution in November, 1924, the final bill was sent to the Taylor Company, which was prepared by one of the plaintiffs, and the same was approved by Thomas. This bill covered the last four years of the partnership from March, 1921, until November, 1924, and was taken to the Taylor Company by plaintiff Houghton, and the bill was paid. This bill was for $1,290 and showed a detailed statement of the services rendered by the firm to the Taylor Company, including two items rendered to the Madison Avenue Offices, Inc., making six different matters from November, 1921, to November, 1924, and after each item appear the words, " a reasonable charge."

After an article appeared in the public press that the Canadian

Pacific Building had been sold, then in June and the first part of July, 1925, the plaintiffs endeavored to induce John H. Taylor, who had been a member of the original firm, to join them in a suit against Thomas to recover their share of the stock of the Madison Avenue Offices, Inc., and there were several interviews between Taylor and Shepard, and Taylor and Thomas which resulted in Thomas stating to John H. Taylor that if there was any outstanding matter which he owed, whether as a legal proposition or merely as man to man, he would settle it by doing what was fair and right, but if they claimed any fraud against him he would not pay five cents to settle.

Nothing in the proof shows that Thomas acquired his stock in the Taylor Company or in the Madison Avenue Offices, Inc., under any agreement that he was to render legal services therefor or as a compensation for any legal services to be performed by him for either company. It is conceded that there was no express agreement proven as to the rendition of any service by Thomas. Thomas' testimony and that of Thomas B. Taylor show that there was no agreement expressly made, and also negative any implied agreement that Thomas was to render services for his stock. He joined the Taylor Company originally as an officer and director at the request of William J. Taylor, and whenever he rendered any bills of a legal nature he sent a bill to William J. Taylor. Thomas B. Taylor, a brother of William J. Taylor, deceased, testified that his brother had told him that Thomas had been interested with him financially in previous building contracts and had consulted with him frequently, and he considered him a good man to have a connection with, and that he was going to give him ten per cent of the stock of the William J. Taylor Company in lieu of any previous arrangement he had had with him. From 1909 to 1912 Thomas, as vice-president of the company, received a salary from the company. Thomas got his stock in the Madison Avenue Offices, Inc., by reason of being a stockholder in the William J. Taylor Company, and there was nothing in the transactions which indicated that he was to render legal services or procure his firm to do so, because of having received that stock.

John H. Taylor, formerly a partner, said that he told Shepard when Thomas acquired the Madison Avenue Offices, Inc., stock, that Thomas was getting a ten per cent interest in the Madison Avenue Offices, Inc., and that he was not getting any stock for services.

No fraud, therefore, has been shown, as charged in the complaint, that defendant wrongfully concealed from the plaintiffs that he received stock in the Taylor Company and in the Madison Avenue Offices, Inc., as compensation for legal services rendered. Thomas

First Department, May, 1927.    [Vol. 220

never received any stock as consideration for services rendered. Before the partnership was formed, plaintiffs knew that he was a stockholder in the Taylor Company, and Shepard and Houghton knew that he was a stockholder in the Madison Avenue Offices, Inc., within three days after he received his qualifying shares. There was nothing to show that when the final account was prepared by one of the plaintiffs and submitted to Thomas, he made any representations whatever. He took the accounts as they came and said nothing with respect to their items or charges. The conclusion is, therefore, correct that no proof was made of plaintiffs' cause of action.

As to the judgment rendered in favor of the defendant Mack: It appears that the defendant Mack was originally not a party to the action, the plaintiffs being of the opinion that he had no interest in the matter. After the action was commenced, the defendant John H. Taylor made a motion to have Mack joined as a party. This motion was denied and Taylor appealed. Pending the appeal a stipulation was entered into by which Mack was joined as a party, the complaint being amended so as to contain an allegation to the effect that he asserted that he had an interest in the subject-matter of the controversy. He then served an answer in which he set out a first counterclaim to the effect that he had been a member of the firm from November, 1919, to March, 1921, when an adjustment was made. He alleged that the partnership agreement provided that he was entitled to receive twenty per cent of the net earnings of the firm in excess of $25,000 per year. He said that the adjustment with him at the time that he retired from the firm was based upon the correctness of the books of account, and that if the allegations of the complaint were true, he was deceived and was entitled to share in the fees which might be found due to the firm by reason of his interest. This first counterclaim falls with the dismissal of plaintiffs' action. His second counterclaim alleged that at the time of the agreement to dissolve the firm of Thomas & Houghton, which included Mack and Taylor as members, he and Taylor organized the law firm of Mack & Taylor. He said that at the time of the withdrawal of himself and John H. Taylor from the firm in 1921, there was pending in the Supreme Court, New York county, an action known as *Egyptian Lacquer Manufacturing Co.* v. *Dolmetsch*, in which the firm of Thomas & Houghton were attorneys of record for certain intervenors, and that it was agreed that the firm should continue as attorneys of record and that he and the defendant Thomas should continue to represent the intervenors in that action and that any fees received from the intervenors for such services should be divided between the firm of Thomas & Houghton and the firm of Mack &

Taylor, the former firm receiving two-thirds of such fee and the latter firm one-third. He then alleged that the plaintiffs and the defendant Thomas, with full knowledge of that agreement, subsequently received the sum of $20,000 and interest as fees for services rendered to the said intervenors, and that they also incurred certain expenses in the collection of the fees, the amount of which he did not know, but that they, the plaintiffs and the defendant Thomas, had failed to account for such fees to himself and the defendant John H. Taylor. In his prayer for relief he asked that the plaintiffs and the defendant Thomas be decreed to render a full, true and complete account of all moneys received for services rendered to the intervenors in the action of *Egyptian Lacquer Manufacturing Co.* v. *Dolmetsch.*

The plaintiffs denied in their reply the agreement as to the division of these fees as alleged in the second counterclaim and interposed a defense to the effect that in June, 1922, an action was begun by them and the defendant Thomas against Hugo Zeller and Lydia Zeller, as executor and executrix under the will of Gustave O. Zeller, deceased, to recover the sum of $30,000 for legal services that they had performed in that action as intervenors in the case of *Egyptian Lacquer Manufacturing Co.* v. *Dolmetsch;* that the action for services was tried in the Westchester County Supreme Court, and after a trial the jury found a verdict in favor of the plaintiffs for two-thirds of the amount demanded in the complaint, to wit, $20,000; that the judgment was paid to plaintiffs and that that judgment is the fee of $20,000 referred to in the counterclaim of the defendant Mack. The reply sets out too that Mack at the time of the trial of that action was a partner of Hugo Zeller, one of the executors of the Zeller estate, and he appeared on the trial of that action both as a witness on behalf of the defendants and as assistant counsel for the defendants, and took an open part in the conduct of the trial from the beginning to the end. It is further pleaded that defendant Mack testified in that action that neither he nor his partner Taylor nor the plaintiffs were entitled to any compensation for services performed in the case of *Egyptian Lacquer Manufacturing Co.* v. *Dolmetsch.* It is alleged too that, in response to a written request which the defendant Mack prepared or assisted in preparing, the learned trial court charged the jury in effect that in fixing the amount to which the plaintiffs might be entitled, the jury might consider the fact that a portion of the services rendered to the intervenors in the action of *Egyptian Lacquer Manufacturing Co.* v. *Dolmetsch* had been performed by defendant Mack and thus might award to the plaintiffs in that action the value of the work performed by Thomas alone. The

reply then pleads that the determination in that action was a bar to the recovery of any moneys by defendant Mack on his second counterclaim in this action, and that the issue as to his right to share in that fee had been adjudged against him.

Defendant Thomas also put in a reply to this second counterclaim by defendant Mack to the effect that the defendant Mack by his actions in the trial in Westchester county was estopped from asserting any claim for any part of the fees paid pursuant to said judgment, and that his right to claim any part of said fees has been finally adjudicated against him.

On this trial it was ruled that the defendant Mack was not estopped from asserting his claim to one-third of the fees recovered by these plaintiffs and the defendant Thomas from the estate of Gustav O. Zeller, and that the issue as to his right to share in those fees was not adjudicated in the Westchester county trial. In the judgment now here it is provided that defendant Mack is entitled to the relief demanded in the second counterclaim, and that a referee be appointed to ascertain and report the amount of necessary disbursements and deductions incurred by the firm of Thomas & Houghton in connection with the recovery of this fee from the Zeller estate and to find the net fee and compute the amount which would be equivalent to one-third thereof.

Defendant Mack, as a witness and as assisting counsel in the Westchester trial, supported the claim of the Zeller estate that the firm was entitled to nothing for its services because of an alleged agreement providing for a contingency which did not happen, to wit, that unless the firm of Thomas & Houghton, acting with the firm of Taylor & Mack, succeeded in selling certain stock held by the Zeller estate for $300 a share or over, they would not get anything and neither would he. Although he testified there that neither he nor the plaintiffs were entitled to recover any sum, here he contends that since the jury found in plaintiffs' favor he may recover one-third of the fee. He not only testified at that trial, but at the conclusion of the case the learned trial judge, in response to a request presented by the trial counsel for the Zeller estate, whom Mack was assisting, charged the jury that in fixing the value of the services performed by Thomas, they might consider the fact that part of the work was performed by Mack. After that charge the jury returned a verdict for $20,000, which was exactly two-thirds of the amount sued for by the plaintiffs.

The judgment recovered by the plaintiffs and the defendant Thomas against the Zeller estate was affirmed by the Appellate Division and by the Court of Appeals (*Thomas* v. *Zeller*, 206 App. Div. 767; 237 N. Y. 597), and was paid in March, 1924. The first

time that Mack made any claim for any part of this judgment was when he filed his answer in this action, although he knew when the judgment was paid by Hugo Zeller, one of the executors of the estate, who was his partner.

We think defendant Mack is estopped from a recovery of any judgment in this counterclaim, and that he comes within the rule that a claim made or position taken in a former action or judicial proceeding will estop the party from making any inconsistent claim or taking a conflicting position in a subsequent action or judicial proceeding to the prejudice of the adverse party. We conclude that he should not be permitted to assert his counterclaim under any technical rule of law when he has so conducted himself that it would be contrary to equity to permit him to profit at plaintiffs' or defendant Thomas' expense. He has endeavored to defeat the claim, and he should not now be permitted to assert a part of its existence in his favor.

That portion of the judgment appealed from which grants interlocutory relief to the defendant Mack upon his second counterclaim should be reversed, with costs, and the counterclaim dismissed, with costs to the plaintiffs and the defendant Thomas.

That portion of the judgment which dismisses the complaint of the plaintiffs against the defendants Thomas and William J. Taylor Company should be affirmed, with costs to said defendant Thomas.

DOWLING, P. J., MERRELL, FINCH and PROSKAUER, JJ., concur.

Judgment so far as it grants interlocutory relief to defendant Mack upon his second counterclaim reversed, with costs, and counterclaim dismissed, with costs to the plaintiffs and the defendant Thomas. Judgment so far as it dismisses complaint against the defendants Thomas and William J. Taylor Company affirmed, with costs to said defendant Thomas. Settle order on notice.