## (February 8, 1962)

■ HOWARD DOLCH, an Infant, by IRVING DOLCH, His Guardian ad Litem, et al., Respondents, v. COMMERCIAL INSURANCE COMPANY OF NEWARK, NEW JERSEY, Appellant.

MEMORANDUM: Order entered on August 1, 1961 denying defendant's motion for summary judgment, affirmed, with $20 costs and disbursements to the respondents. Plaintiffs, on February 27, 1959, recovered a judgment after inquest against the owner of a dwelling in an action for personal injuries which is unsatisfied. This action is against the owner's insurer on a liability policy covering the premises. Defendant's motion for summary judgment is grounded on an affidavit by an associate of defendant's attorney, largely hearsay, which includes the following: "On June 12, 1957 the personal injury action came on for pre-trial * * * It appeared that corroborating proof that the premises was a multiple dwelling would be forthcoming as a basis for alleged liability." The same affidavit alleges that the defendant insurer thereafter withdrew from the defense of the action "because of the misrepresentation

involved ". The misrepresentation is spelled out by the defendant's liability policy which describes the building as a two-family dwelling in reliance upon the insured's representation to that effect. The complaint in the prior action alleged the building was a multiple dwelling and the answer denied the said allegation. The insured's attorney in response to defendant's disclaimer dated June 27, 1957 reiterated the denial as follows: "Your letter of June 27, 1957 advising of an alleged misrepresentation is not factual, as you have previously been told. The accident occurred when the premises in question was a two family house." The affidavits on this motion establish a factual issue with regard to whether or not the premises was a multiple dwelling at the time of the occurrence. Defendant, nevertheless, having in the prior action on June 27, 1957 disclaimed liability on its policy by reason of its insured's alleged misrepresentation, now seeks to estop the plaintiffs from establishing that the covered building was a two-family dwelling because in the prior action the plaintiffs alleged the building was a multiple dwelling and because of what transpired at the informal, unrecorded, pretrial conference more than 20 months before the inquest resulting in the underlying judgment. The defendant's allegation with regard to the pretrial proceeding on June 12, 1957 is conclusory; it does not set forth any factual statement by or on behalf of the plaintiffs. This court need not rely thereon. (*McDonald* v. *Ruggiero,* 144 App. Div. 230, 231–232.) The answering affidavit of plaintiffs' counsel, fairly construed, denies any such statement. Estoppel is not alleged in the answer. Moreover, there is no factual basis for precluding plaintiffs from proving that the liability policy was effective at the time of the occurrence and properly described the building as a two-family dwelling. The authorities cited in the dissent show that judicial estoppel may be applied against one who has procured a prior determination upon a state of facts inconsistent with proof tendered in subsequent litigation. The affidavit of plaintiffs' counsel alleges no evidence was before the court in the prior proceeding that the building was a multiple dwelling. The record of the inquest in the prior action is not before us. There is not before us a finding in the prior action that a multiple dwelling was involved. If we assume that the underlying judgment is erroneous, absent proof of a multiple dwelling, it does not avail the defendant. The defendant elected not to defend the action and the judgment may not be attacked collaterally. We may not at this time search the record of the prior action for error.

STEUER, J. (dissenting). The affidavits on this application for summary judgment show that in 1955 the plaintiff, then a young boy, visited his grandmother at her house at 3737 Cypress Gardens in Brooklyn. While there he fell over some appurtenances of the house and he brought suit against his grandmother. His father also sued for loss of services. The grandmother turned the complaint over to her insurance carrier, the defendant in this action. The carrier undertook to defend and when the case was called for pretrial conference it challenged the allegation in the complaint that the building in question was a multiple dwelling.

The issue was a significant one in the action then pending. A social visitor, as this plaintiff concededly was, is a mere licensee, and his host owes him no duty to maintain the premises (*Traub* v. *Liekefet,* 2 A D 2d 22; *Roth* v. *Prudential Life Ins. Co.,* 266 App. Div. 872). The only grounds of recovery are active negligence or the existence of a trap (*Buono* v. *W. J. I. Building Corp.,* 241 App. Div. 764). A visitor to a tenant in a multiple dwelling, on the contrary, enjoys the same status as to maintenance as does a tenant. So while it might have been possible for plaintiff to have succeeded on proof of a trap (it appears that active negligence was never considered provable), plaintiff at

the pretrial conference took the position that this was a multiple dwelling, as alleged in the complaint, and stated to the court the facts on which he supported that contention. The carrier thereupon withdrew from the defense of the case, as its policy did not insure the grandmother for the operation of a multiple dwelling. That the policy so provides is conceded in this action. The grandmother defaulted and the case proceeded to inquest where a judgment against her was entered for $3,500.

As defendant insurance carrier refused to pay the judgment, this suit, pursuant to section 167 of the Insurance Law, was instituted. Now, for the first time, plaintiff claims that the building was not a multiple dwelling but a two-family house. The claim is that it had been a multiple dwelling but that prior to the accident it had been converted to a two-family house. Sufficient facts are set forth to raise an issue on this question, if the plaintiff can be heard to assert them. The issue, purely one of law, is whether he can.

*Res judicata* is a pretty troubled area in the law and it is probable that if defendant had only this staff to give it support, it might find it was leaning on a broken reed. The conclusory effect of a prior or related judgment is limited to such facts as are necessarily determined in the prior action (*Smith* v. *Kirkpatrick*, 305 N. Y. 66; *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, 250 N. Y. 304). What is necessarily determined becomes more difficult of ascertainment where the judgment is by default rather than after a bona fide contest. Even though the same rules apply (*Gates* v. *Preston*, 41 N. Y. 113; *O'Hagan* v. *Kracke*, 253 App. Div. 632), it is incumbent on the party making the claim to demonstrate that the fact was not fragmentary but essential to the entry of the judgment (*Hinchey* v. *Sellers*, 7 N Y 2d 287). Here, although plaintiff proceeded on an allegation that this was a multiple dwelling in obtaining his judgment, whether it was essential or not raises a semantic dispute. It was essential in the sense that in the absence of additional facts no recovery could be had without that allegation. It was not essential in the sense that other facts might have been adduced which would have allowed recovery if that fact was not established. In an uncontested proceeding the necessity of establishing these facts would never be reached.

But there is another legal principle which controls this situation and on which defendant can rely with greater confidence. That is the rule of judicial estoppel. The classic statement of the rule is found in *Horn* v. *Bennett* (253 App. Div. 630, 631) : "Parties in court are not permitted to assume inconsistent positions in the trial of their causes. If they accept the benefit of a judgment they are estopped from taking a contradictory position either on the same trial or in another suit which grows out of the judgment in the first."

Several cases apply it (*Anthony* v. *Wise*, 130 N. Y. 662; *Houghton* v. *Thomas*, 220 App. Div. 415, affd. 248 N. Y. 523; *McDonald* v. *Ruggiero*, 144 App. Div. 230, and others). The rule requires these elements: that a fact should have been asserted in a prior action; that the party asserting it relied on the validity of the fact in putting forward his claim; that he was successful in that action and consequently in establishing the validity of the fact; and that it would be prejudicial to his present opponent to allow him to contravene or abandon that fact. The rule is grounded in policy and the policy has been stated to be "a desire to preserve the dignity of judicial proceedings by preventing the successive assertion of factually contradictory statements as the truth" (Developments in the Law—Res Judicata, 65 Harv. L. Rev. 817, 823–824). The only criticism that can be made of this statement of policy is that it is too temperate. The oath still remains the chief safeguard to our determination of facts regardless of whether one regards it as a religious sanction or a technical condition to a prosecution for perjury. To allow it to

be flouted by serious attention to successively different versions of the same fact, depending on which best serves the party's need at the moment, is to advise that the oath is an archaic formality. And this is more than a complacent recognition of a low standard. It not only encourages, it rewards unscrupulous greed.

It has been asked why the defendant, the insurance carrier, did not defend the original action and thus, possibly, avoid the present contretemps. Neither at law nor in good conscience could such a course be pursued. In defending, an insurance company takes the place of the real defendant and by a legal fiction becomes the defendant. Such fictions are short cuts and subject to the same infirmities that beset physical short cuts — in the main they save time and effort, but in the exceptional instance the traveller gets lost. Here, the interests of the defendant (assuming, which is unlikely, that the grandmother wanted to see her grandson fail in his efforts at recovery) and the carrier coincide up to a point. The carrier would be quite satisfied if the plaintiff recovered, provided he recovered on proof that the building was a multiple dwelling. So that on the trial, the efforts of the carrier, the active defending factor, would be confined to restricting plaintiff to his complaint — an exercise quite distinct from protecting the interests of the real defendant. In good conscience it could not come into court with such an aim, and in law it would be at least arguable that in so doing it betrayed its insured to an extent that would make it liable.

In his insistence that he is entitled to take the position he does, plaintiff relies strongly on *Jewtraw* v. *Hartford Acc. & Ind. Co.* (284 App. Div. 312). Several considerations moved the court in that case in arriving at its decision, and if necessary it could be distinguished. In all fairness, however, there is one argument presented which, if sustained, plaintiff can rightfully look to for consolation. That is, in his suit against the insurer plaintiff stands in the shoes of the insured and so is free from the restrictions of his own prior claims. For two reasons this is unsound. Firstly, plaintiff is not adopting the position of the insured on the trial — if he were, he could not recover at all because the insured denied liability to him. What he is doing is adopting the position of the insured after the trial, namely, that despite his position at the trial the verdict and judgment here established certain things to be the facts and on those facts he is entitled to be reimbursed. Of course, on those facts in this instance he would not be entitled to be reimbursed. The second reason is that in any event one cannot change his oath as easily as he changes his shoes.

We have seen that the plaintiff's contention is not inadvertent. His position was advised. If he is held to it, there is no issue in the case. Therefore, summary judgment should have been granted.

The order should be reversed and judgment granted to defendant.

VALENTE, J. P., McNALLY and EAGER, JJ., concur in decision; STEUER, J., dissents in opinion in which STEVENS, J., concurs.

Order entered on August 1, 1961 denying defendant's motion for summary judgment, affirmed, with $20 costs and disbursements to the respondents.