■ ARTHUR YOUNG & COMPANY, Respondent, v ROBERT W. BLACK, Appellant. — Motion granted insofar as to recall and vacate the order of this court entered on August 11, 1983 and the memorandum decision (96 AD2d 784) filed therewith, and to substitute therefor a new order and memorandum released simultaneously with the order on this motion. Order entered February 4, 1983 in Supreme Court, New York County (Rena K. Uviller, J.), which granted plaintiff's motion for a preliminary injunction modified, on the law and the facts and in the exercise of discretion, and the injunction is limited to those clients of plaintiff who were never formerly clients of defendant or his father, and the order is otherwise affirmed, without costs. Plaintiff, a nationwide accounting firm with 700 partners, seeks to enjoin defendant, a former partner, from competing with it for the business of clients defendant serviced while in plaintiff's employ. It is alleged that the seven clients Black has approached are worth $150,000 in fees, with at least three of them already switching their $36,500 worth of business to defendant. The noncompetition clause which plaintiff wants enforced is part of the October 1, 1979 revision of Arthur Young's articles of partnership. Defendant signed it then, when he was a partner. The contested clause states in pertinent part: "I further agree that for a period of two years after I withdraw from the firm that I will not without its prior written consent, provide professional services such as those provided by the firm to any client of the firm, or for the purpose of providing such professional services, solicit or participate in the solicitation of any client of the firm, which was a client of the firm any time during the twelve months prior to my withdrawal and for whom I provided any service in the five year period preceding my withdrawal. I further agree that prior to my withdrawal, without prior written permission of the firm, I will not discuss with any client of the firm my intention to withdraw from the firm (except if withdrawal is for retirement or to enter a business which does not compete with the firm) nor will I solicit any such client." Defendant states that he was fired and did not "withdraw". In addition, we note that there is no allegation that defendant was privy to trade secrets or insider information, or that his services as ¬an accountant are special, unique or extraordinary. (See, e.g., *Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp.*, 42 NY2d 496.) While "[e]ach case must, of course, depend, to a great extent, upon its own facts" (*Karpinski v Ingrasci*, 28 NY2d 45, 49), it is not at all clear that the plaintiff would probably succeed on the merits. (*Reed, Roberts Assoc. v Strauman*, 40 NY2d 303; *Lynch v Bailey*,

275 App Div 527, affd 300 NY 615; *People v Canal Bd.*, 55 NY 390, 394-395; compare *Post v Merrill Lynch, Pierce, Fenner & Smith*, 48 NY2d 84, 89 [per Wachtler, J.]; but see Handler & Lazaroff, Restraint of Trade and the Restatement [Second] of Contracts, 57 NYU L Rev 669, 717-720.) Moreover, without even reaching the merits, plaintiff has hardly shown that the loss of $36,500 worth of business from its $800 million revenues will cause it the "immediate and irreparable injury" required for the grant of an injunction (CPLR 6301). Rather, a balance of the equities shows defendant to be the party who will be seriously burdened by such a decree. On the other hand, there is no reason not to enforce the injunction as to clients of plaintiff who had no contact with defendant or his father prior to defendant joining plaintiff's firm, or as to clients brought into the firm and serviced by defendant after his joining plaintiff's firm. Although ultimately monetary damages would be compensation to plaintiff, we prefer to maintain a *status quo* that will encourage the parties to quickly resolve their differences at a trial on the merits. Concur — Carro, Fein and Alexander, JJ. Sandler, J. P., concurs in a memorandum, and Asch, J., dissents in a memorandum, as follows:

Sandler, J. P. (concurring). I agree that the preliminary injunction should be modified to the extent of excluding from its scope those clients of the plaintiff who had been brought into the firm by the defendant and his father when they joined it, and those clients which the defendant himself thereafter brought into the firm. Special Term was clearly correct in the conclusion that the noncompetition clause in issue is on its face narrowly drawn, and one that in the usual situation would be enforceable. The problem arises from the undoubted fact that enforcement of the clause in accordance with its terms against this defendant will cause him very serious economic damage. The defendant is a lifelong resident of Baltimore who has practiced accounting in that city all his professional life. It is clear that he was required to withdraw from plaintiff firm because of dissatisfaction with his performance. To deny defendant the right to service those clients who had been developed over many years by his father and himself is to inflict on him a grievous professional injury indeed. I appreciate that it has been strongly argued that undue hardship is not a circumstance that may appropriately be relied upon to render invalid a noncompetition agreement that would otherwise be valid. (See Handler and Lazaroff, Restraint of Trade and the Restatement [Second] of Contracts, 57 NYU L Rev 669, 717-739; but cf. Restatement, Contracts 2d, § 188, subd [1], par [b].) But that issue appears not to have been definitively resolved in this State, and I see no reason for our deciding it at this stage of the litigation. Whatever conclusion may ultimately be reached after a trial, it seems to me that a balancing of the equities here clearly weighs against the issuance of a preliminary injunction to the extent to which it denies the defendant the right to serve what are in effect his clients. As to all other clients of the plaintiff firm, I agree that there is no valid reason not to sustain the injunction that was issued.

Asch, J. (dissenting). I would affirm the order of Special Term enjoining defendant from soliciting or providing professional accounting services to former clients of plaintiff. This is a classic case for granting a preliminary injunction to enforce a restrictive covenant. The covenant which plaintiff sought to enforce is contained in a letter agreement dated October 1, 1979, and reads in pertinent part: "In consideration of the benefits which will inure to me as a partner in, or a withdrawn partner of * * * I agree with the firm as follows * * * I agree that I shall not use such information concerning the firm's business or trade secrets which I have acquired * * * Moreover I further agree that for a period of two years after I withdraw from the firm that I will not without its prior written consent, provide professional services such as those

provided by the firm to any client of the firm, or for the purpose of providing such professional services, solicit or participate in the solicitation of any client of the firm, which was a client of the firm any time during the twelve months prior to my withdrawal and for whom I provided any service in the five year period preceding my withdrawal". Defendant admittedly solicited or began accounting work for several of plaintiff's clients which he had serviced within five years of his departure from plaintiff. The issue of whether defendant voluntarily "withdrew" from the firm or was fired was not raised by him at Special Term. In any event, "withdrawal" need not be voluntary for the restrictive conditions to apply. Such a distinction, if any, is not significant in this case. Plaintiff's organization manual makes this clear. It describes circumstances under which a partner may be *asked* to withdraw from the firm, "unfortunate or distressing as it may be". The nonsolicitation, nonservice agreement, therefore, restricted defendant whether he withdrew or was "fired" (was asked to withdraw) as a partner (see *Young & Co. v Crosley,* NYLJ, June 2, 1983, p 5, col 1 [Grossman, J.]). The provision is no more than a reasonable restriction to protect a legitimate economic interest of the plaintiff accounting firm. By the express terms of the agreement, plaintiff would only prohibit defendant from soliciting and serving a limited class of clients for a limited period of time. There is no restriction at all on defendant's practice of his profession with any other clients or in the geographic area. The agreement which is sought to be enforced originally arose in 1964 when defendant and his father sold their accounts to plaintiff in return for substantial benefits then and in the future. However, there is no need to buttress the validity of the defendant's present duty upon that old agreement. The defendant over the years has been a party to a series of withdrawal agreements with plaintiff. He signed the first one upon becoming a partner in 1967 and voluntarily, without any objection, signed all of the successor articles of partnership, each of which contained a noncompete provision. In 1974 this provision was placed in a separate less restrictive noncompete letter agreement, later superseded by a "noncompete" letter agreement in 1979, both of which defendant also signed. It is this latest nonsolicitation, nonservice letter agreement of October 1, 1979, with which we are concerned. It is clear that in New York, covenants restricting an employee or partner from competing with his former employer or partnership are customarily upheld if the restrictions are "reasonable as to time and area, necessary to protect legitimate interests, not harmful to the public, and not unduly burdensome" (*Gelder Med. Group v Webber,* 41 NY2d 680, 683). The agreement herein certainly satisfies all the foregoing criteria. In a case involving a very similar restriction upon partners in a national accounting firm, this court observed: "The restraints are not general, appear reasonably limited in time and appear reasonably related to [the firm's] legitimate interests. Nor are [the partners] prohibited from practicing their profession in any way except that they may not render services to [the firm's] clients." (*Matter of Schachter* [*Witte & Co.*], 52 AD2d 121, 125, affd 41 NY2d 1067.) Plaintiff has also demonstrated that the defendant herein had a unique and extraordinary role within plaintiff firm. Defendant maintained and developed close relations with plaintiff's clients because of the nature of his professional relationship and because of the special role he was given in the Baltimore office by the plaintiff. This is an important factor in enforcing this restrictive covenant (see *Service Systems Corp. v Harris,* 41 AD2d 20; *Goldberg Co. v Stern,* 53 AD2d 246). The defendant has benefited financially from his relationship with the firm for the last 18 years. I note that defendant will receive retirement benefits upon reaching the age of 60 from the plaintiff firm, which benefits are primarily unfunded and paid out of future profits, and although no longer a partner, he shared in the firm's profits for fiscal 1983.