■ SCOTT PAPER COMPANY, Respondent, v JOHN J. FINNEGAN, JR., Appellant. — Order, Supreme Court, New York County (Richard W. Wallach, J.), entered December 21, 1983, which granted plaintiff's motion for a preliminary injunction, is unanimously reversed, on the law and the facts and in the exercise of discretion, with costs, and plaintiff's motion for a preliminary injunction is denied. ¶ Special Term's grant of a preliminary injunction enforcing the restrictive covenant in the employment contract of John J. Finnegan, Jr.

(Finnegan), with Scott Paper Company (Scott) upon a finding that during the course of his employment with Scott, Finnegan was privy to Scott's trade secrets and confidential competitive methods, which if disclosed to Finnegan's present employer Fort Howard Paper Company (Fort Howard) would result in irreparable harm to Scott, was error. Finnegan's employment contract provides that for a period of not less than six nor more than 24 months following the termination of his employment by Scott, he will not, without the written consent of Scott, engage in any work or activity that involves or is directly related to confidential information of which he became aware or had access to during his employment or that was in or directly related to the specific areas of subject matter in which he worked during his employment with Scott. "Confidential information" is defined by the agreement to include "all business information and records which relate to the Company and which are not known to the public generally, including but not limited to * * * customer lists; customer buying records; product sales records; territory listings; market surveys; marketing plans; long-range plans; salary information; contracts; supplier lists; and correspondence". The restriction extended to a 150-mile radius of Finnegan's last job assignment and was to be imposed only "to the extent * * * reasonably necessary for the protection of [Scott's] interest." Should Finnegan be unable to obtain other suitable or comparable employment because of the negative covenant, Scott was obligated to pay him a monthly sum equal to the base compensation he earned at Scott. ¶ Prior to Scott's acquisition in 1981 of his then employer, American Convenience Products (ACP), Finnegan had been eastern regional sales manager, managing 60% of ACP's total business. He considered the various positions to which he was transferred by Scott after the acquisition to be demotions. When he resigned in June, 1983, he was a senior accounts manager in the commercial products profit center with a salary of $45,100, required to report to the manager of Scott's New York and New Jersey districts. ¶ On September 6, 1983, without notice to Scott, Finnegan accepted the position of district manager for the New York District with Fort Howard Paper Company, one of Scott's major competitors, at $36,000. Shortly thereafter, Scott commenced this action for a permanent injunction and obtained the preliminary injunction appealed from. "On a motion for a preliminary injunction the movant must prove the likelihood of his ultimate success on the merits; irreparable injury to him, absent granting of the injunction; and a balancing of the equities in his favor". (*Paine & Chriscott v Blair House Assoc.*, 70 AD2d 571, 572; *Olesckco v New York State Liq. Auth.*, 29 AD2d 84, affd 21 NY2d 778.) In the case of employment contracts, a restrictive covenant will be enforced only to the extent necessary to protect the employer from unfair competition which stems from the employee's use or disclosure of trade secrets or confidential customer lists (*Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp.*, 42 NY2d 496, 499; *Reed, Roberts Assoc. v Strauman*, 40 NY2d 303, 307-308; *American Broadcasting Cos. v Wolf*, 52 NY2d 394, 403). ¶ Because this record fails to demonstrate that Finnegan was privy to any confidential information which currently merits protection, injunctive relief was unwarranted. (*Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp., supra,* at p 500; *Greenwich Mills Co. v Barrie House Coffee Co.,* 91 AD2d 398; *Young & Co. v Black,* 96 AD2d 784.) The identities of Scott's distributors who purchase large carload quantities of Scott products and those service distributors who purchase less than a carload are commonly known to Fort Howard and throughout the industry. (*Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp., supra,* at p 500.) Moreover, such data as customer preferences, pricing information and other competitive information (promotions, services, etc.) in the paper industry are readily available and freely communicated to various manufacturers through the distributors who

handle the products of several manufacturers and seek to gain competitive advantage in their self-interest. ¶ Moreover, any knowledge of allowable price deviations and permissible price margins used by Scott to meet the competition that was acquired by Finnegan during his employment at Scott appears now to be outdated information. Price decisions are made on current competitive information which fluctuates constantly and rapidly in the industry. Additionally, it appears that the several Scott promotional activities in which Finnegan was involved have run their course and are no longer in effect. Thus the strategies underlying these activities, having been utilized during the periods in which they were in effect prior to 1984, are known throughout the industry and may not properly be classified as confidential. The same may be said for Scott's operating plans and other sales and promotional objectives for 1983, to which Finnegan was privy. ¶ Scott has failed to demonstrate that Finnegan possesses any current information such as would constitute a protectible interest. Moreover, even if it were shown that Finnegan possesses such current information, it is doubtful that it could be characterized as confidential. It would appear that in most instances such information is readily available by mere inquiry made of distributors and end-use customers. Thus, Scott has failed to demonstrate that Finnegan has any confidential information that he might impart to Fort Howard which might result in Fort Howard gaining an unfair competitive advantage which it might not have gained had Finnegan not been in its employ. (See *Greenwich Mills Co. v Barrie House Coffee Co., supra,* at p 405.) ¶ The public policy of this State is to generally "disfavor * * * anticompetitive covenants contained in employment contracts" (*American Broadcasting Cos. v Wolf, supra,* at p 404), and where it does not appear that the services rendered to the employer were special, unique or extraordinary (*American Broadcasting Cos. v Wolf, supra; Young & Co. v Black, supra; Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp., supra*), or that disclosure of information to the employer's competitor would result in the loss of business, customers or other damage to the employer, such covenants are not to be enforced. Concur — Murphy, P. J., Asch, Bloom, Fein and Alexander, JJ.