ARTHUR YOUNG & COMPANY, Plaintiff, v JOSEPH P. GALASSO, JR., Defendant.

Supreme Court, New York County, February 23, 1989

## APPEARANCES OF COUNSEL

*Cahill Gordon & Reindel (Thomas J. Kavaler* and *Thomas M. Campbell* of counsel), for defendant. *Carl D. Liggio, Scott M. Univer* and *Lois A. Chamberlain,* for plaintiff.

## OPINION OF THE COURT

DAVID B. SAXE, J.

In *Reed, Roberts Assocs. v Strauman* (40 NY2d 303, 308), the

court held that "restrictive covenants will be enforceable to the extent necessary to prevent the disclosure or use of trade secrets or confidential * * * information". The issue raised by the defendant's motion to dismiss the complaint (CPLR 3211 [a] [7]) is whether this holding mandates that a restrictive covenant contained in an agreement between a national accounting firm and one of its former partners be enforced only if enforcement will prevent the disclosure of trade secrets or confidential information.

The defendant was a partner in the large national accounting firm of Arthur Young & Company from 1980 to 1987. The four-page letter agreement signed by the defendant and relied upon by the plaintiff is dated as of January 1, 1987, and recites that its terms are consented to "In consideration of the benefits which will inure to me as a partner in, or a withdrawn partner of, the partnership existing under and evidenced by the Articles of Partnership of Arthur Young United States dated as of October 1, 1986". Among its terms is the provision that for a period of two years after the partner withdraws from the firm, he will not provide professional accounting services to any client of the firm, and will not solicit any client of the firm which was a client of the firm at any time during the 12 months prior to his withdrawal and for whom he provided accounting services during the five-year period prior to his withdrawal from the firm. Also among the terms of the letter is a liquidated damages clause providing that if the ex-partner serves any client of the firm as prohibited, he shall pay the firm 150% of either the last year's fees billed to that client or the average of the last three years' bills to that client.

The defendant contends that the letter agreement is void for lack of consideration and mutuality, and is unenforceable in that the restrictive covenant is not reasonably necessary to protect the firm's legitimate business interests. He also challenges the legality of the liquidated damages provision.

Initially, I reject the plaintiff's suggestion that the doctrine of estoppel against inconsistent positions precludes the defendant from challenging the legality of the restrictive covenant. The doctrine against inconsistent positions also known as judicial estoppel, "precludes a party from 'framing his * * * pleadings in a manner inconsistent with a position taken in a prior proceeding' * * *. The doctrine rests upon the principle that a litigant 'should not be permitted * * * to lead a court to find a fact one way and then contend in another judicial

proceeding that the same fact should be found otherwise' " *(Environmental Concern v Larchwood Constr. Corp.,* 101 AD2d 591, 593 [2d Dept 1984]).

*Environmental Concern (supra)* illustrates the classic situation to which judicial estoppel applies: there, Larchwood Corp. had contracted to supply certain plants to be used in the construction of a sewer district project; Larchwood then subcontracted with Environmental Concern, Inc. for Environmental to supply the plants. When a delay in construction resulted in the destruction of the plants, Larchwood sued the sewer district, taking the position that the plants had been ready for delivery on the date specified in the contract and met the contract's specifications. Larchwood prevailed in that action. However, when the subcontractor sued Larchwood for breach of the subcontract, Larchwood asserted as a defense that the plants did not meet contractual specifications and were not tendered in accordance with the terms of the subcontract. The court judicially estopped Larchwood from asserting that defense, since it had already succeeded in asserting an exactly opposite position.

The case of *Houghton v Thomas* (220 App Div 415, *affd* 248 NY 523) further illustrates the principle. It explains that in one action, brought by a law firm to recover a fee from a client, an ex-partner who was named as a party defendant testified for the client that the firm had not done the work required under its agreement with the client; despite his testimony, the firm obtained a judgment for its fee. Subsequently, the ex-partner interposed a claim against the law firm in another action, seeking a portion of the fee previously recovered from the client. The ex-partner was judicially estopped from asserting the claim, with the explanation that he had "endeavored to defeat the claim, and he should not * * * be permitted to assert a part of its existence in his favor" *(Houghton v Thomas,* 220 App Div 415, 423, *supra).*

In both of the above cases, the party being judicially estopped was an actual party to the prior action. The plaintiff has not cited, nor has the court found, any cases in which an individual is judicially estopped from taking a legal position previously taken by an organization to which that individual belonged. Yet the plaintiff now contends that the doctrine of estoppel against inconsistent positions should be applied to the defendant because of a legal position previously adopted by the plaintiff firm when the defendant was a member of it.

The prior litigation upon which the plaintiff relies here were other, similar actions brought by the accounting firm, as an entity, against ex-partners. The defendant in the present action was certainly not a named party to the prior actions, although he was a member of the firm during those prior lawsuits.

The interests of a firm as a whole are not necessarily always identical to the interests of the individual partners. Consequently, the legal positions taken by the firm—particularly vis-à-vis the actions of ex-partners—cannot properly be attributed to or imposed upon its individual partners, who may themselves seek to dissociate themselves from the firm in the future. I therefore conclude that the firm's legal arguments in the prior litigation do not preclude the individual ex-partner from subsequently offering contrary arguments simply because he was a member of the firm during the earlier litigation.

Turning to the legality of the restrictive covenant, the defendant fails to demonstrate that as a matter of law the agreement lacks consideration. The continuing benefits inuring to the defendant under the October 1986 partnership agreement, as recited in the agreement, includes financial benefits and such intangibles as increased knowledge, skill, or status in his profession, and constitute consideration.

The issue of mutuality is also raised by the defendant as a defense to the letter agreement. He relies on the case of *Lynch v Bailey* (275 App Div 527 [1st Dept 1949], *affd* 300 NY 615), which considered a restrictive covenant contained in the partnership agreement of a national accounting firm. After analysis of the covenant's extent, scope, and purpose, the court held it to be unreasonable and thus unenforceable. (275 App Div 527, 534, *supra.)* The court then went on to note that the restrictive clause was also invalid in that it lacked mutuality, since "[t]he States of Michigan and California by statute expressly declare restrictive [covenants] of the nature herein void and unenforceable" (275 App Div 527, 534, *supra).* The court noted that the accounting firm had offices in California and Michigan, and reasoned that in those States the restrictive covenant could not be enforced against the firm's partners.

The defendant, in a similar vein, cites and relies on the Michigan statute, repealed in 1985, which provided that any and all agreements not to engage in any form of employment

were void as against public policy *(see,* Mich Comp Laws Annot § 445.761). Following the court's reasoning in *Lynch v Bailey (supra),* the defendant argues that partners of Arthur Young situated in Michigan would not be bound by the agreement, certainly prior to 1985 and perhaps thereafter as well, and that therefore the agreement lacks mutuality.

For several reasons, I find that the reasoning employed in *Lynch v Bailey (supra)* on the issue of mutuality should not be employed in the present matter. First, while in general the doctrine of mutuality requires that both parties to a contract be bound by mutual obligations *(see,* 1A Corbin, Contracts § 152, at 2; 1 Williston, Contracts § 105A, at 420 [3d ed]; 21 NY Jur 2d, Contracts, § 11, at 420), mutuality is not always essential to a binding contract. The real inquiry concerns the existence of consideration: "For, while coextensive promises may constitute consideration * * * 'mutuality', in the sense of requiring such reciprocity, is not necessary when a promisor receives other valuable consideration". *(Weiner v McGraw-Hill, Inc.,* 57 NY2d 458, 464.) The existence of sufficient consideration received by the defendant here has already been established.

Secondly, the discussion regarding mutuality in *Lynch v Bailey (supra)* is dictum.

Lastly, the 1987 letter agreement was executed after the Michigan statute was repealed, and any challenge to its validity in that State is no longer simply referable to a statute, but requires analysis of the substance and terms of the agreement, and is not amenable to summary treatment on a dismissal motion.

In conclusion, the claimed absence of mutuality does not support dismissal of this action.

The defendant next contends that as a matter of law the covenant is unenforceable, relying on *Reed, Roberts Assocs. v Strauman* (40 NY2d 303, *supra).* In that case, the plaintiff was a company engaged in the business of supplying advice to employers regarding their obligations under the unemployment laws. Upon being hired by the plaintiff firm, the defendant signed a restrictive covenant providing that at no time would he solicit any of plaintiff's clients, and that for a period of three years from the date his employment terminated, he would not engage in any business of the type engaged in by the plaintiff within a specified geographical region. The Court of Appeals upheld a finding that the restrictive covenant

prohibiting competition would not be specifically enforced as it was unreasonable, and further held that its clause permanently prohibiting solicitation of plaintiff's customers was also not specifically enforceable. It held that (1) to specifically enforce the noncompetition clause the former employer must demonstrate that the employee's services were unique or extraordinary as well as that the restriction is reasonable; and (2) to specifically enforce the nonsolicitation provision it must be established that the restrictive covenant was necessary to prevent the disclosure or use of trade secrets or confidential customer information *(Reed, Roberts Assocs. v Strauman, supra,* at 308).

It is clear, however, that to determine the standard by which to judge a restrictive covenant, the court must consider the type and breadth of the restriction as well as the nature of the business or service involved *(see, Greenwich Mills Co. v Barrie House Coffee Co.,* 91 AD2d 398, 401 [2d Dept 1983]). For example, in *Gelder Med. Group v Webber* (41 NY2d 680), a medical partnership was granted a permanent injunction prohibiting an ex-partner from practicing his profession in a 30-mile radius of the partnership's location for a five-year period. The court stated the rule as follows: "Covenants restricting a professional, and in particular a physician, from competing with a former employer or associate are common and generally acceptable * * *. As with all restrictive covenants, if they are reasonable as to time and area, necessary to protect legitimate interests, not harmful to the public, and not unduly burdensome, they will be enforced". (41 NY2d 680, 683, *supra.)* No mention was made by the court of either uniqueness of the physician's services or the presence of trade secrets.

Similarly, in the earlier case of *Karpinski v Ingrasci* (28 NY2d 45), a restrictive covenant prohibiting an oral surgeon from practicing his profession in a prescribed region after leaving the employ of the plaintiff was upheld. The court there cited the doctrine " 'that a member of one of the learned professions, upon becoming assistant to another member thereof, may, upon a sufficient consideration, bind himself not to engage in the practice of his profession upon the termination of his contract of employment, within a reasonable territorial extent' " (28 NY2d 45, 49, *supra,* quoting Annotation, *Restriction on Practice of Physician,* 58 ALR 156, 162). There, too, the opinion contains no indication that any uniqueness in the ex-employee's services, or any confidential

customer information, must be pleaded or proved before a restrictive covenant may be enforced.

Most importantly, in *Young & Co. v Black* (97 AD2d 369 [1st Dept 1983]), a preliminary injunction which was granted pursuant to the same restrictive covenant under consideration here was upheld on appeal, although the court specifically noted that there was no allegation that the ex-partner there was privy to trade secrets or confidential information.

I conclude therefore that the absence of allegations that the defendant may disclose trade secrets or confidential information is not fatal to enforcement of a restrictive covenant in the setting of the accounting profession.

The question of whether the covenant is enforceable centers on the reasonableness of the restrictions in the particular circumstances *(see, Karpinski v Ingrasci,* 28 NY2d 45, 49, *supra),* which fact-sensitive issue may not be decided here as a matter of law.

Finally, the question of whether the liquidated damages clause constitutes an unreasonable penalty is best left to the time of trial.

Accordingly, the motion to dismiss is denied.