OPINION OF THE COURT
Peter Tom, J.
Plaintiff Garvin GuyButler Corporation (GGB) moves pursu *40 ant to CPLR 6301 for a temporary restraining order preliminarily enjoining defendant Cowen Government Brokers, L.P. (Cowen Brokers) and its agents and officers, and defendants Glenn J. Stefani, William D. Bolton, and Daniel LaVallee (the individual defendants) for the period to and including February 17, 1993, from using confidential, proprietary information or trade secrets of GGB in any way.
Plaintiff GGB is engaged in the business of brokering transactions in a variety of money market instruments, e.g., term Federal funds, United States money market instruments, mortgage-backed securities (mortgage backs) and repurchase agreements (repos).
Cowen Brokers is a Delaware Limited Partnership formed on or about December 26, 1990 which is involved in the brokerage of mortgage-backed repurchase agreements and repurchase of various other securities.
Until they tendered their resignation on February 6, 1992, the individual defendants were employed by plaintiff GGB, specializing in mortgage back repo transactions.
Defendant Stefani was hired by GGB in late 1986, and worked his way up to the head of the mortgage back division of the repo transactions department. When he was first hired, Stefani signed an agreement called "Proprietary Rights & Non-Disclosure Agreement” (the Proprietary Rights Agreement). Confidential and proprietary information covered by this agreement included all data, customer lists, and other information submitted to the employee, who agreed to maintain confidentiality and not make any unauthorized use of the information. During his employment with GGB, Stefani also executed an employment contract which contained an agreement by Stefani not to use or disclose to anyone confidential information or trade secrets during the period of his employment, and one year beyond termination. Both the Proprietary Rights Agreement and the employment contract contain provisions entitling GGB to injunctive relief enforcing the aforesaid provisions.
Defendant Bolton was hired in August 1987 and was transferred to the repo department in October 1988. Like Stefani, Bolton signed a Proprietary Rights Agreement, identical to the one executed by Stefani. Bolton also executed an employment contract with GGB substantially similar in pertinent part to Stefani’s contract.
Defendant LaVallee was hired in September 1986 as a *41 trainee in the repo department. Like his codefendants, LaVallee signed a Proprietary Rights Agreement.
Immediately after resigning from GGB, the individual defendants commenced working for Cowen Brokers engaging in mortgage back repo transactions. Cowen Brokers is a competitor of GGB in the repo purchase market.
Plaintiff contends in the instant motion that upon their defection, the individual defendants took with them confidential, proprietary trade information concerning GGB’s customers’ trading and positions and are utilizing such information to benefit themselves and Cowen Brokers to the detriment of GGB.
Generally, repo transactions involve the sale and repurchase of securities for the purpose of obtaining short-term financing at a low rate of interest. The seller who wants to borrow money sells securities (collateral) to a buyer or investor and simultaneously the seller agrees to repurchase the collateral on some fixed future date which is known as the "off date” or "term date.” The repurchase terms including the repurchase price are set at the time of the original transactions so that the investor earns a fixed rate of return on his investment. If the seller wishes to continue the same deal or renegotiate a subsequent deal with the same securities, the transaction is known as a "roll over.”
The collateral underlying repos is generally considered to carry zero or near zero credit risk. Securities that are routinely repoed include United States Treasury securities, negotiable bank certificates of deposit ($1 million face value), bankers’ acceptances, and mortgage-backed papers. Repo transactions are a large part of the United States money market.
From the repo trade, money is borrowed by the seller from the temporary sale of securities, and the lender earns a short term rate of interest on the money loaned with little or no credit risk involved.
Repo rates are highly competitive. The repo traders look to pay the lowest price possible and repo investors look to earn the highest rate of return.
A broker earns a commission at the initial sale by bringing a buyer and seller together and by assisting the parties in coming to an agreement on the rate of interest charged for the duration of the loan. The broker can earn a second commission if he transacts the repurchase or roll over transac *42 tian on the off date. It is not unusual for different segments of the repurchase transaction to be brokered by different competing repo brokers.
Brokers operate by installing screens on traders desks and by installing direct phone lines to traders of repos, soliciting bids and offers from the traders, posting the information on the bids and offers on their screens, and collecting a fee from the activating trader on each trade. The computer screens provide communication between the broker and his customer regarding bids and offers.
GGB’s repo customers are primarily securities dealers. GGB has installed screens with 75 customers throughout the country and maintains equipment and software required to run it at its own expense.
GGB asserts that knowledge of the approaching off dates with repo dealers for repurchase of the securities creates a highly competitive advantage for getting repurchase commissions for the brokerage firm. The broker would then have information to timely notify the dealer as to whether he wishes to repurchase the securities or wants to roll over the transaction immediately before the off date to generate a commission.
To that end, GGB alleges that its operations department keeps detailed records of each repo trade with its customers including their positions and off dates. GGB asserts that the individual defendants while employed as brokers for plaintiff were required to keep records known as "trade blotters” which contain information including off dates for each trade for GGB’s customers that they brokered.
Plaintiff contends that the customer trade information contained in the trade blotters which is the identical information provided by its operations department is confidential and proprietary to GGB.
Plaintiff asserts that when the individual defendants defected to Cowen Brokers they removed their trade blotters and also took computer printouts containing off dates possibly reaching out as far as one year from the date of their departure and are currently using this information to benefit themselves and Cowen Brokers in violation of their fiduciary and contractual obligations to GGB.
In the case of employment contracts a restrictive covenant will be enforced only to the extent necessary to protect the employer from unfair competition which stems from the em *43 ployee’s use or disclosure of confidential information or trade secrets. (Columbia Ribbon & Carbon Mfg. Co. v A-l-A Corp., 42 NY2d 496, 499; Reed, Roberts Assocs. v Strauman, 40 NY2d 303, 307-308; Scott Paper Co. v Finnegan, 101 AD2d 787.)
A protected trade secret can be a formula, process, device or compilation of information used in one’s business which confers a competitive advantage over those in similar businesses who do not know or use it. (Delta Filter Corp. v Morin, 108 AD2d 991; Eagle Comtronics v PICO, Inc., 89 AD2d 803.)
By the competitive nature of the repo business and the manner in which repo brokers earn commissions, the court finds that knowledge of off dates gives a clear advantage to the broker to negotiate repo repurchase trades. Notwithstanding the fact that repo trades are accomplished through competitive bids and offers and that the repurchase transactions can often be brokered by different brokers, knowledge of upcoming off dates gives the broker a competitive edge by providing the broker with the opportune time to contact and negotiate with the repo dealer or trader the repurchase trade. With intense competition among repo brokers, knowledge of term dates can only aid and assist, and thereby create a competitive advantage for the broker to negotiate a repurchase trade or roll over.
Defendants argue that the off date information does not meet the trade secret test since an essential requisite of a trade secret is the element of secrecy and here the off date is known to the buyer, the seller and the broker. The court finds defendants’ argument unpersuasive under the facts and circumstances of this case.
While it is true that the buyer, the seller and the broker are all privy to the off date of each repo trade they transact, the extensive compilation by the brokerage firm of numerous off dates of different repo customers as a whole or collectively can create protected confidential information which, if imparted to a competitor, would result in the competitor gaining an unfair competitive advantage. (Scott Paper Co. v Finnegan, supra.)
The off dates of a few repo transactions may be ascertainable but an extensive compilation of off dates of numerous large repo dealers is not accessible to repo brokers at large and would be difficult to acquire or duplicate. It would require extraordinary efforts by other repo brokers to duplicate the compilation of off dates of GGB’s repo customers.
The extensive compilation by GGB of off dates for repo *44 transactions of its customers collectively creates the element of secrecy and " 'except by the use of improper means, there would be difficulty in acquiring the information’ ” (see, Delta Filter Corp. v Morin, supra, at 992).
The court finds GGB’s compilation of off dates for its mortgage back repo transactions constitutes a trade secret.
Further, if there has been a physical taking or studied copying of confidential information, the court may in a proper case grant injunctive relief, not necessarily as a violation of a trade secret, but as an egregious breach of trust and confidence while in plaintiff’s service. (See, Leo Silfen, Inc. v Cream, 29 NY2d 387.)
As to this issue plaintiff has demonstrated a likelihood of ultimate success on the merits.
The executive vice-president of GGB, James Munelly, states that the individual defendants took with them when they left the trade blotters which contained the customers’ positions and off dates. GGB diligently searched for the trade blotters after the individual defendants left but none of the blotters could be found.
GGB’s operations officer, Jeffrey Beauchert, was responsible for compiling and maintaining a computer database containing trade information and providing that information to brokers to aid them in servicing GGB’s customers. Jeffrey Beau-chert states that in or about September 1991, defendant Stefani requested from him printouts of off dates beyond the normal semiweekly distribution. He further states that from that time until February 6, 1992 when the individual defendants left, Stefani regularly requested off date trade reports covering the succeeding month and all off dates showing on the books. Mr. Beauchert also recalls defendant LaVallee asking for the same information.
Jeffrey Beauchert further avers that the information concerning customers’ positions and off dates are confidential and that he was directed by GGB to only divulge the information to GGB brokers.
A senior repo broker for GGB, Edward Keslo, states in his affidavit, that after the individual defendants left he spoke with a mortgage back repo trader at Kidder, Peabody on February 11, 1992. The Kidder trader informed Keslo that Stefani had called the Kidder trader to inform him of an open repo position. The Kidder broker states, "those guys have a list of all their trades so they were letting us know.” The *45 transcript of the recorded conversation is annexed to plaintiffs motion papers.
Plaintiff has shown irreparable injury absent the granting of the preliminary injunction.
Defendants Stefani, LaVallee and Bolton constituted the entire group of brokers at GGB specializing in transactions involving repos of mortgage-backed securities. If the individual defendants are permitted to use the compilation of off dates for repo trades to divert customers from GGB to Cowen Brokers, such action, if unrestrained, can lead to the decimation of GGB’s mortgage back repo business.
The balancing of the equities lies in favor of movant’s position.
The prohibition of defendants to utilize confidential and proprietary information of GGB pending the disposition of this case will not prejudice defendants but rather shall maintain the status quo. (Shorell Labs, v H. Allen Lightman, Inc., 24 AD2d 856, appeal dismissed 17 NY2d 870.)
Based on the foregoing, plaintiff’s motion is granted to the extent of directing that an order be issued preliminarily enjoining defendant Cowen Government Brokers, L.P. and its agents and officers, and Glenn J. Stefani, William D. Bolton, Daniel LaVallee and all other persons, acting in concert or participation with them, for the period to and including February 17, 1993, from using in any way confidential, proprietary information or trade secrets of plaintiff including but not limited to trade blotters and computer printouts containing off dates for repo transactions.
Plaintiff shall post an undertaking in the amount of $250,000.
The temporary restraining order previously issued is hereby amended to conform to the injunctive relief granted in this decision.