Wachtler, J.
These cross appeals involve the efficacy of an employment contract provision barring an employee from either directly or indirectly competing with, or soliciting clients of his former employer. This restrictive covenant is not a proper subject for specific enforcement since the services of the employee were not unique or extraordinary and the employer failed to establish a studied copying of a customer list.
Reed, Roberts Associates, Inc., with over 6,000 customers being served through some 21 offices scattered throughout the Nation and with gross sales of almost $4 million, is one of the top three companies in its field. The lion’s share of its business involves supplying advice and guidance to employers with respect to their obligations under State unemployment laws. The object of this service is to minimize the tax liability and administrative expenses involved in complying with these laws. Other services performed by Reed, Roberts include consultation regarding workmen’s compensation, disability benefits and pension plans. This action was commenced by Reed, Roberts to prevent a former employee from competing against them and soliciting their customers.
When John Strauman was hired by Reed, Roberts[1] in November, 1962 he signed a restrictive covenant which read in pertinent part: "I do therefore consent that fat no time shall I either directly or indirectly solicit any of your cliente|and I do further agree that for a period of three years from the date of termination of my employment that I will not either directly or indirectly be engaged in, nor in any manner whatsoever become interested directIy~or indirectly, either as employee, owner, partner, agent, stockholder, director or officer of a corporation or otherwise, in any business of the type and character engaged in by your company within" the geographical limits of the City of New York and the counties of Nassau, Suffolk and Westchester.”
*306 Strauman’s first position as an employee of Reed, Roberts was technical man-auditor. Since he had four years’ experience in the field by virtue of having previously' workéd for a major competitor, Strauman became a valuable employee and over the next 10 years received three important promotions rising to senior vice-president in charge of operations. Throughout his tenure with Reed, Roberts, Strauman was instrumental in devising most of the forms utilized by the company in rendering its service and in setting up its computer system. On becoming vice-president he was given increased responsibility with regard tojnternal affairs including the formulation of company policy. \Importantly, however, he was not responsible for sales or obtaining new customersTfrhe record indicates that while the business forms used by Reed, Roberts were unique to that service industry, they were not much different from those used by other companies.[2]
After 11 years with Reed, Roberts, Strauman decided to strike off on his own and formed a company called Curator Associates, Inc. This company was^in direct competition with his former employer and was even located in the same municipality] Although Reed, Roberts alleges that Curator has been soliciting its customers, ÍCurator sustained losses] of some $38,000 with gross sales ofonly $1,100 during its first year of operations. Nevertheless, fearful of competition from the former employee, Reed, Roberts commenced this action seeking to enforce the posttermination covenant not to compete signed by Strauman in 1962. Specifically Reed, Roberts seeks to enjoin Strauman and Curator from engaging in the business of unemployment tax control within the metropolitan area for a period of three years and to enjoin them from soliciting any of Reed, Roberts’ customers permanently.
The trial court granted this relief in part. The court refused to prohibit defendants from engaging in a competitive enterprise finding that there were no trade secrets involved here and that although Strauman was a key employee his services were not so unique or extraordinary as to warrant restraining his attempt to compete with his former employer. Nevertheless the court believed that it would be[unjust and unfair for Strauman to utilize his knowledge of Reed, Roberts’ internal *307 operations to solicit its clients and permanently enjoined defendants from doing so^ The Appellate Division affirmed, without opinion. We believe the order of the Appellate Division should be modified to the extent of reversing so much thereof as grants a permanent injunction against the defendants.
Generally negative covenants restricting competition are enforceable only to the extent that they satisfy the overriding ^requirement of reasonableness. Yet the formulation of reasonableness may vary with the context and type of restriction imposed. For example, where a business is sold, anticompetition covenants will be enforceable, if reasonable in time, scope and extent. These covenants are designed to protect the goodwill integral to the business from usurpation by the former owner while at the same time allowing an owner to profit from the goodwill which he may have spent years creating. (See, e.g., Purchasing Assoc. v Weitz, 13 NY2d 267, 271, and authorities cited there; see, also, Mandel, Preparation of Commercial Agreements [1970 ed], pp 52-54.) However, where an anticompetition covenant given by an employee to his employer is involved a|stricter standard of reasonableness will be appliedTj
In this context |Trestrictive covenant will only be subject to specific enforcement to the extent that it is reasonable in time and area, necessary to protect the employer’s legitimate interests, not harmful to the general public and not unreasonably burdensome to the employeej (e.g., Clark Paper & Mfg. Co. v Stenacher, 236 NY 312; Service Systems Corp. v Harris, 41 AD2d 20; see, generally, Richards, Drafting and Enforcing Restrictive Covenants Not to Compete, 55 Marquette L Rev 241). Undoubtedly judicial disfavor of these covenants is provoked by "powerful considerations of public policy which militate against sanctioning the loss of a man’s livelihood” (Purchasing Assoc. v Weitz, supra, p 272). Indeed, our economy is premised on the competition engendered by the uninhibited flow of services, talent and ideas. Therefore,tno restrictions should fetter an employee’s right to apply lb his own best advantage the skills and knowledge acquired by the overall experience of his previous employmentjj This includes those techniques which are but "skillful variations of general processes known to the particular trade” (Restatement, Agency 2d, § 396, Comment b; see, also, Customer List—as Trade Secret-Factors, Ann., 28 ALR3d 7).
*308 Of course, the courts must also recognize the [legitimate interest an employer has in safeguarding that whicnhas made his business successful and to protect himself against deliberate surreptitious commercial piracy. Thus ^restrictive covenants will be enforceable to the extent necessary to prevent the disclosure or use of trade secrets or confidential customer informatiorTj(e.g., Lepel High Frequency Labs. v Capita, 278 NY 661; Carpenter & Hughes v De Joseph, 10 NY2d 925). In addition |fnjunctive relief may be available where an employee’s services are unique or extraordinary and the covenant is reasonable](e.g., Lumley v Wagner, 42 Eng Rep 687; Frederick Bros. Artists Corp. v Yates, 271 App Div 69, affd 296 NY 820). This latter principle has been interpreted to reach agreements between members of the learned professions (e.g., Karpinski v Ingrasci, 28 NY2d 45).
With these principles in mind we consider first the issue of solicitation of customers in the case at bar. The courts below found, and Reed, Roberts does not dispute, that there were Km trade secrets involved here!] The thrust of Reed, Roberts’ argument is that by virtue of Strauman’s position in charge of internal administration he was privy to sensitive and confidential customer information which he should not be permitted to convert to his own use. The law enunciated in Leo Silfen, Inc. v Cream (29 NY2d 387) is dispositive. There, as here, the fnlaintiff failed to sustain its allegation that the defendant had pirated the actual customer lishfRather Silfen argued that in light of the funds expended to compile the list it would be unfair to allow the defendant to solicit the clients of his former employer. We held that yvhere the employee engaged in no wrongful conduct and the names and addresses of potential customers were readily discoverable through public sources, an injunction would not lie!] Similarly here there was no finding that Strauman acted wrongfully by either pilfering or memorizing the customer list (compare Lincoln Steel Prods. v Schuster, 49 AD2d 618). More important, by Reed, Roberts’ own admission every company with employees is a prospective customer and the solicitation of customers was usually done through the use of nationally known publications such as Dun and Bradstreet’s Million Dollar Directory where even the name of the person to contact regarding these services is readily available (Leo Silfen, Inc. v Cream, supra, pp 392-393). It strains credulity to characterize this type of information as confidential. Consequently, the trial court’s *309 determination that Strauman and Curator should be permanently enjoined from soliciting Reed, Roberts’ customers as of the date of his termination was erroneous.
Apparently, the employer is more concerned about Strauman’s knowledge of the intricacies of their business operation. However, absent any wrongdoing, we cannot agree that Strauman should be prohibited from utilizing his knowledge and talents in this área (see Restatement, Agency 2d, § 396, Comment b). A contrary holding would make those in charge of operations or specialists in certain.„aspects of an enterprise virtual hostages of their employers .WWhere the knowledge does not qualify for protection as a trade secret and there has been no conspiracy or breach of trust resulting in commercial piracy we see no reason to inhibit the employee’s ability to realize his potential both professionally and financially by availing himself of opportunity. Therefore, despite Strauman’s excellence or value to Reed, Roberts the trial court’s finding that his services were not extraordinary or unique is controllingQ^nd properly resulted in a denial of the injunction against operating a competing business.
Accordingly, the order of the Appellate Division should be modified in accordance with this opinion.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
Order modified, with costs to defendants, in accordance with the opinion herein and, as so modified, affirmed.

. Apparently at that time Reed, Roberts was organized as a partnership; and a few months later it was incorporated.

. Interestingly, one of Reed, Roberts’ founding partners testified that the company was initiated with the assistance of an employee of one of the leading firms in the area of unemployment tax control. This employee showed them the competitor’s internal forms including the pricing schedules which were copied verbatim.