Chief Judge Breitel
In an action by a medical partnership for a permanent injunction to enforce a restrictive covenant not to compete, defendant physician appeals. He had been expelled as a partner pursuant to the partnership agreement. Special Term granted the injunction on summary judgment under CPLR 3212, and dismissed defendant’s counterclaim for a declaratory judgment and damages resulting from plaintiff’s alleged breach of the partnership agreement. A divided Appellate Division affirmed.
At issue is whether a partner who has been forced out of a partnership as permitted by the partnership agreement may be held to his covenant not to compete within a restricted radius of 30 miles for a five-year period.
There should be an affirmance. Having joined a partnership governed by articles providing for the expulsion without cause of a member on terms that are not oppressive, and including a reasonable restrictive covenant, defendant may not complain of its enforcement.
The Gelder Medical Group, a partnership engaged in practicing medicine and surgery in Sidney, New York, was first formed in 1956. Some 17 years later, defendant Dr. Webber, then 61 years old and a newcomer to Sidney, a village of 5,000 population, was admitted to the small partnership following a one-year trial period in which he was employed by the group as a surgeon. Previously, after having entered the field of surgery, he had drifted from one professional association to another in two different provinces of Canada and in at least *682 four different States of this country in the northeast and midwest. He came to the group from Columbus, Indiana.
As had the other members of the group who had joined since its inception, and critical to plaintiff’s complaint, Dr. Webber had agreed that he "will not for five years after any [voluntary or involuntary] termination of his association with said Gelder Medical Group, practice his profession within a radius of 30 miles of the Village of Sidney, as a physician or surgeon * * * without the consent, in writing, of said Gelder Medical Group.” The partnership agreement also provided a procedure for the involuntary withdrawal of partners. Thus, it was, in pertinent part, provided that "In the event that any member is requested to resign or withdraw from the group by a majority vote of the other members of the group, such notice shall be effective immediately and his share of the profits to the date of termination shall be computed and he shall be paid in full to the date of termination of his employment pursuant to his agreement with the association.”
Dr. Webber’s association turned out to be unsatisfactory to his partners. His conduct, both professional and personal, assertedly became abrasive and objectionable to his partners and their patients, a cause of "intolerable” embarrassment to the group. Revealing is a letter of a psychiatrist who, after his formal termination, examined Dr. Webber a number of times on the referral of the partnership. In the psychiatrist’s words, Dr. Webber initially "appeared clinically with what would be termed an adjustment reaction of adult life with anxiety and depression”. While the psychiatrist concluded that the adjustment reaction soon cleared, he summed up his description of Dr. Webber as a perfectionist who was a "rather idealistic sincere, direct, frank individual who quite possibly could be perceived at times as being somewhat blunt.” In fact, Dr. Webber, in one of his affidavits, conceded, commendably, that he is probably "more of a perfectionist and idealist than he should be.”
Although during the association difficulties were from time to time discussed with Dr. Webber, the unhappy relationship persisted. In October, 1973, the discord culminated with the group’s unanimous decision to terminate Dr. Webber’s association with the partnership. After Dr. Webber refused to withdraw voluntarily, the group, in writing, formally notified him of the termination. It was effective immediately, and, on the basis of an accounting, Webber was paid $18,568.41 in full *683 compliance with the articles of agreement which, it is notable, provided for voluntary or involuntary termination on substantially the same terms. But that did not end the unpleasantness.
In about two months, the expelled partner, disregarding the restrictive covenant, resumed his surgical practice as a single practitioner in Sidney. The group, to protect its practice, promptly brought this action to enjoin Dr. Webber’s violation of the restrictive covenant and obtained a temporary injunction. Dr. Webber instituted his own action for a declaratory judgment and for damages in allegedly wrongfully expelling him. The actions were consolidated.
The plain meaning and intended effect of the restrictive covenant and the provisions for expulsion are not now in dispute. Dr. Webber urges, however, that the court superimpose a good faith requirement on the partnership’s right to expel and to enforce the restrictive covenant. Also urged is the inevitable argument that the restrictive covenant is unreasonable under the circumstances.
The applicable law is straightforward. Covenants restricting a professional, and in particular a physician, from competing with a former employer or associate are common and generally acceptable (see, e.g., Karpinski v Ingrasci, 28 NY2d 45, 47-49; see, generally, Validity and Construction of Contractual Restrictions on Right of Medical Practitioner to Práctice, Incident to Partnership Agreement, Ann., 62 ALR3d 970). As with all restrictive covenants, if they are reasonable as to time and area, necessary to protect legitimate interests, not harmful to the public, and not unduly burdensome, they will be enforced (see, e.g., Reed, Roberts Assoc. v Strauman, 40 NY2d 303, 307, mot for rearg den 40 NY2d 918; Karpinski v Ingrasci, 28 NY2d 45, 49-51, supra).
Similarly common and acceptable are provisions in a partnership agreement to provide for the withdrawal or expulsion of a partner. While there is no common-law or statutory right to expel a member of a partnership, partners may provide, in their agreement, for the involuntary dismissal, with or without cause, of one of their number (see Millet v Slocum, 4 AD2d 528, 532, affd 5 NY2d 734; Gill v Mallory, 274 App Div 84, 85 [Van Voorhis, J.]; see, also, 43 NY Jur, Partnership, §98).
Turning to the Gelder Group agreement, no acceptable reason is offered for limiting the plainly stated provisions for *684 expulsion, freely subscribed to by Dr. Webber when he joined the group, and none is perceived. When, as here, the agreement provides for dismissal of one of their number on the majority vote of the partners, the court may not frustrate the intention of the parties at least so long as the provisions for dismissal work no undue penalty or unjust forfeiture, overreaching, or other violation of public policy (cf. Gill v Mallory, 274 App Div 84, 85, supra).
Assuming, not without question, that bad faith might limit the otherwise absolute language of the agreement, the record does not reveal bad faith. Embarrassing situations developed, affecting the physicians and their patients, as a result of Dr. Webber’s conduct, however highly motivated his conduct might have been. It was as important, therefore, in the group’s eyes, as anything affecting survival of the group that it be disassociated from the new member’s conflict-producing conduct. Indeed, at the heart of the partnership concept is the principle that partners may choose with whom they wish to be associated (see Partnership Law, § 40, subd 7; 43 NY Jur, Partnership, § 15).
Even if bad faith on the part of the remaining partners would nullify the right to expel one of their number, it does not follow that under an agreement permitting expulsion without cause the remaining partners have the burden of establishing good faith. To so require would nullify the right to expel without cause and frustrate the obvious intention of the agreement to avoid bitter and protracted litigation over the reason for the expulsion. Obviously, no expulsion would ever occur without some cause, fancied or real, but the agreement provision is addressed to avoiding the necessity of showing cause and litigating the issue. On the other hand, if an expelled partner were to allege and prove bad faith going to the essence, a different case would be presented. As with any contractual agreement, in the time-honored language of the law, there is an implied term of good faith (Van Valkenburgh, Nooger & Neville v Hayden Pub. Co., 30 NY2d 34, 45, cert den 409 US 875; 10 NY Jur, Contracts, § 203). In his affidavits Dr. Webber has not shown even a suggestion of evil, malevolent, or predatory purpose in the expulsion. Hence, he raises no triable issue on this score.
Insofar as the restrictive covenant is concerned, its reasonableness must be measured by the circumstances and context in which enforcement is sought (Reed, Roberts Assoc. v Strau *685 man, 40 NY2d 303, 307, supra). The Gelder Group, named after its founder and long dominant manager, was founded more than 20 years ago. Dr. Gelder and his associates, before Dr. Webber’s advent, had spent years, great effort, and money in its development, including ownership of the building in which it operated. It was not unreasonable, in admitting new members to the partnership, that voluntary withdrawal or involuntary expulsion should be coupled with a restrictive covenant. In the small Village of Sidney, it was not unreasonable to extend the covenant tó a radius of 30 miles of the village, and it was certainly quite reasonable to limit the noncompetition term to five years.
In this case the covenant applies to a man whose career had been spent, during the same time the Gelder Group was built up, in repeatedly changing professional associations within a range of thousands of miles. Until his arrival in Sidney he had no roots there, and, if he had developed any, they were shallow and originated largely because of his association with the Gelder Group.
There is, and it is significant, no evident harm brought to the public by enforcing the covenant. Dr. Webber is, obviously, not the only physician in Sidney; defendant himself submits there are at least a half dozen others serving the small village and its environs. Even crediting his contention, which does not go unchallenged, that he is the village’s only surgeon, there is every indication surgeons are available in nearby Binghamton and Oneonta, cities presumably capable of supporting surgical facilities more sophisticated than those of modest Sidney. Moreover, Dr. Webber points out in his affidavit that, by arrangement, surgeons came from Binghamton to Sidney.
Hence, defendant’s attempts to free himself from the covenant not to compete, which, it is notable, will expire by its own provisions in less than two years, must be rejected. It is true, as the group stated in its letter of termination to Dr. Webber, that the termination was a tragedy which it regretted. But the expulsion clause was designed to function when the conflict between the group and one of its members was insoluble, and the necessity for its use must always be unfortunate. Such use is free of fault to remedy an intolerable situation, a situation which would not be less intolerable because the "blame” for its occasion could be pointed in one direction rather than another.
*686 Accordingly, the order of the Appellate Division should be affirmed, with costs.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.