■ COOL INSURING AGENCY, INC., Respondent, v EDWARD J. ROGERS, Appellant.—Levine, J. Appeal from an order of the Supreme Court (Dier, J.), entered January 20, 1986 in Warren County, which granted plaintiff's motion for a preliminary injunction.

In March 1985, defendant commenced employment with plaintiff, an insurance agency. Defendant signed an employment agreement setting forth the terms and conditions of his employment. The contract contained several restrictive covenants barring various activities by defendant in the event of a termination of his employment with plaintiff, under which he agreed (1) not to disclose for an indefinite period any confidential information acquired during his employment, such as expiration lists, customer lists and commission rates; (2) for a period of two years after termination, whether for himself or for any other business enterprise, not to maintain an insurance office within 25 miles of plaintiff's principal office in Warren County or perform services for any other insurance business which maintains an office within 25 miles of plaintiff's principal office; and (3) for the same two-year period, not to solicit or accept insurance business from plaintiff's customers, or to accept business obtained as a result of referrals from plaintiff's customers or accept business from accounts the knowledge of which defendant acquired while in plaintiff's employ.

In October 1985, defendant was discharged by plaintiff. He was subsequently hired to work in an insurance office in Schenectady County, well beyond the 25-mile limit set forth in the agreement. This action was commenced several months later, after plaintiff learned that defendant had solicited insurance business from one of its major accounts and apparently suspected that he had contacted others of its clientele. Plaintiff promptly applied for a preliminary injunction enforcing the restrictive covenants of the employment agreement. Supreme Court granted, essentially in toto, the temporary

relief sought, and did so without requiring plaintiff to file an undertaking. This appeal ensued.

Initially, we note that even if plaintiff was entitled to a preliminary injunction, it should have been required to furnish an undertaking (CPLR 6312 [b]). Nevertheless, this infirmity in the order could be remedied merely by remitting the matter to Supreme Court for the purpose of fixing the amount of the bond *(see, City Store Gates Mfg. Corp. v United Steel Prods.,* 79 AD2d 671, 672).

We are of the further view, however, that it was error in any event to have granted the preliminary injunction. To whatever degree the granting of a temporary injunction is generally a matter of judicial discretion, the availability of such pendente lite relief to enforce a restrictive covenant agreement against a former employee is severely limited, no doubt in recognition of its heavy impact upon the former employee's ability to earn a livelihood and because, given the extensive expense and time entailed in finally determining such matters after trial, an employer largely attains its ultimate objective merely by obtaining the temporary remedy. Therefore, a preliminary injunction barring competition by the employee should only be granted when " 'the right is plain from the undisputed facts. If the right depends upon an issue which can only be decided upon a trial, the injunction cannot be granted' " *(Family Affair Haircutters v Detling,* 110 AD2d 745, 747, quoting *Jaymar's, Inc. v Schwartz,* 37 Misc 2d 314, 316).

The law is by now well settled that these judicially disfavored anticompetitive employment agreements are only enforceable to the extent, *inter alia,* that they are necessary to protect the employer from unfair competition which stems from (1) the employee's use or disclosure of trade secrets; or (2) use of confidential customer lists; or (3) where the employee's services are unique *(Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp.,* 42 NY2d 496, 499; *Reed, Roberts Assoc. v Strauman,* 40 NY2d 303, 308). Plaintiff has not submitted proof that defendant's services are unique, and there is nothing inherently extraordinary or unique in the functions of an insurance agent, in contrast to that of members of the learned professions *(see, Reed, Roberts Assoc. v Strauman, supra,* p 308). Customer lists in the commercial insurance industry are not generally considered to be confidential *(Reidman Agency v Musnicki,* 79 AD2d 1094), and the only showing to the contrary in plaintiff's moving papers are vague, conclusory statements of the substantial time and expense plaintiff had de-

voted to building its customer lists and that its files contained the names of the "decision makers" at the clients who control the accounts. Even if such generalities were sufficient to provide a prima facie case for injunctive relief, they are sharply contested as a factual matter in defendant's opposing affidavit, in which he categorically denies taking any customer lists with him or even having any comprehensive knowledge of plaintiff's clientele. Indeed, he states, without contradiction, that plaintiff emptied his desk of all agency files and records before it abruptly fired him. His affidavit further explains, by detailed description of the conduct of commercial insurance business, why the identities of potential customers cannot be secret.

The only remaining rationale upon which plaintiff can posit the requisite likelihood of success on the merits is by establishing, on undisputed facts, that plaintiff had actually used or threatened to use its trade secrets, other than customer lists. This also is unavailing for various reasons. First, assuming that plaintiff's files in fact contained any confidential information which ought to be protected, plaintiff has utterly failed to make any persuasive evidentiary showing of defendant's actual or threatened misappropriation thereof. Actually, the only concrete fact of *any* violation of the agreement established in plaintiff's moving papers is that of a single solicitation of the business of only one of plaintiff's clients. All other claims of defendant's misconduct are entirely conjectural, such as blanket statements of belief that defendant has solicited "many" of plaintiff's (unspecified) customers, that plaintiff recently has lost an "extraordinary number" of (again unspecified) customers that defendant serviced while in its employ and that its general file for the one client that defendant did contact is missing. Obviously, a concrete, evidentiary basis, if such exists, for these surmises was readily available to plaintiff through its clientele. Again, defendant has sworn that he has not engaged in any significant solicitation of plaintiff's customers and has not used any information about them which he obtained in plaintiff's employ.

Apart from the insufficiency of plaintiff's proof that defendant engaged in unfair competition through the use of plaintiff's confidential information concerning its clients, there is a sharply contested issue of fact as to whether any legitimate trade secrets on its customers actually exist. Defendant has averred that clients' data, to the extent that it may at all be helpful in effecting sales, is either (1) too complex and detailed to be usable without having the actual, full file available for

reference; or (2) is highly changeable and quickly outdated; and (3) in any event, is readily accessible through interviewing the potential customer and reviewing that customer's present insurance policies. These averments, if established at trial, would be sufficient to defeat plaintiff's claim of any actionable misappropriation of trade secrets *(see, Reed, Roberts Assoc. v Strauman, supra,* p 308; *Altana, Inc. v Schansinger,* 111 AD2d 199, 200; *Scott Paper Co. v Finnegan,* 101 AD2d 787, 789). The self-serving declarations as to the existence of trade secrets that plaintiff inserted in the employment agreement it had defendant sign have not been considered conclusive on these factual issues *(see, Family Affair Haircutters v Detling,* 110 AD2d 745, 745-746, *supra).*

Finally, injunctive relief pendente lite should not have been granted because plaintiff has far from demonstrated that a balancing of the equities lies in its favor. The agreement itself is overbroad, extending well beyond any conceivable interest of plaintiff meriting protection, to include barring defendant from even accepting referrals of noncustomer business from plaintiff's clients and preventing defendant from employment with any firm that even maintained a branch office within 25 miles of plaintiff's main office, irrespective of the actual remote location of defendant's reemployment. Defendant was precipitously terminated after only seven months of employment, hardly a sufficient period within which to have formed significant personal relationships with plaintiff's customers so as to enable him to entice them away. Neither at the time of defendant's discharge nor in its supporting papers on the motion has plaintiff offered any reason whatsoever for its termination of defendant's employment. Defendant's averments are also uncontradicted that this occurred after defendant initially brought to plaintiff insurance accounts worth $250,000 and thereafter generated an additional $600,000 worth of new business for plaintiff before he was fired. Thus, the record before us at least equally suggests that this action was commenced to protect plaintiff's appropriation of defendant's business efforts, as it may be read to support plaintiff's opposite claim.

For all of the foregoing reasons, we should reverse and vacate the temporary injunction.

Order reversed, on the law and the facts, with costs, motion denied and preliminary injunction vacated. Mikoll, Yesawich, Jr., and Levine, JJ., concur.

Main, J. P., and Harvey, JJ., dissent and vote to affirm in a memorandum by Harvey, J. Harvey, J. (dissenting). We re-

spectfully dissent. Supreme Court, in the exercise of its discretion, has determined that it is likely that plaintiff will succeed at trial. In our opinion, Supreme Court's decision was supported by the record.

A restrictive covenant will be enforced if it is reasonable in time and area necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee *(Reed, Roberts Assoc. v Strauman,* 40 NY2d 303, 307). Nothing in the record would indicate that the restrictions were unreasonably burdensome. Defendant has a position with another insurance agency in Schenectady County which has the entire Capital District as a market. The two-year, 25-mile restriction is fair, particularly when consideration is given to the fact that defendant had no significant contact with the Warren County area until he entered into the instant contract. No claim is made that the restriction is harmful to the general public.

The only arguable issue is whether the restriction is necessary to protect the employer's legitimate interests. In that respect, the record is not as complete as it would be had a trial taken place. However, the contract itself is evidence of the necessity of the restrictions. Plaintiff established them and they were agreed to by defendant, who had worked in a similar agency the preceding five years. In the contract, defendant acknowledged the confidential nature of the agency's files and activities. We can reasonably assume that at the trial plaintiff will prove that which appears to be common knowledge as to the functioning of an insurance agency. All agencies offer essentially the same policies. Clientele is acquired and retained primarily by service and the knowledge of a client's needs. It is a highly competitive business. Consequently, it would appear that the restriction is necessary to preserve to plaintiff's own use all inside information.

We would affirm Supreme Court's decision as it applied to confidential information and to the extent that plaintiff's customers not be solicited and that defendant not compete within the time and area limitations set forth in the contract.