■ MODERN TELECOMMUNICATIONS, INC., Respondent, v NAT ZIMMERMAN et al., Appellants.

Gordon Enterprises, Ltd. (Gordon) is a New York corporation, and, its principal offices are located in New York County. It is engaged in the business of providing a wide variety of production and postproduction services to New York's major advertising agencies, television stations, and film or video production companies.

The services provided by Post Perfect, a division of Gordon, include videotape editing, and sophisticated computer graphics, on which an artist may create 2- or 3-dimensional animations.

Modern Telecommunications, Inc. (MTI) is a Delaware corporation, and its principal offices are located in New York County. Its business consists of, *inter alia,* providing telecommunication and teleproduction services to commercial, corporate, teleconference, cable and home entertainment television markets.

Compugraph Designs (Compugraph) is a division of MTI. This division's services include design, storyboard, and reproduction of virtually any kind of synthetic image for a wide variety of markets, such as network promotions, advertising, and logo treatments.

In July 1984, pursuant to a three-year contract, which contained a one-year restrictive covenant, MTI hired Mr. Nat Zimmerman (Mr. Zimmerman), who had prior experience working with computer graphics, as a video animation artist. Thereafter, MTI assigned Mr. Zimmerman to its Compugraph division, where his primary responsibility was to produce video animations, such as logos for television stations and news programs. In order to perform those tasks, Mr. Zimmerman worked with two items of equipment, which are referred to in the trade as a "Paint Box" and a Bosch PSG 4000. Over the course of Mr. Zimmerman's employment with MTI, his duties increased to include administrative responsibilities.

The terms of Mr. Zimmerman's contract with MTI provided that either party could terminate said contract by giving written notice of termination by May 15, 1987. Accordingly, on May 14, 1987, Mr. Zimmerman gave MTI the required notice of termination. After the contract expired, Mr. Zimmer-

man remained at MTI as an employee at will until November 1987, when Post Perfect hired him as a producer. The responsibilities of a producer include coordinating all phases of the production process, from contract negotiation to delivery of a final product.

Ms. Janet Scabrini (Ms. Scabrini), who is an artist and who had prior experience working with computer graphics, in March 1984, was hired by MTI as an art director, and, in the course of her duties, she worked with a Bosch computer. After she had worked for four months, Ms. Scabrini signed a three-year contract with MTI, which contained a one-year restrictive covenant. Since her contract would expire on June 6, 1987 unless either Ms. Scabrini or MTI gave written notice of termination by May 15, 1987, Ms. Scabrini gave such written notice on May 14, 1987. Following the contract's expiration, Ms. Scabrini remained at MTI, as an employee at will, until, in approximately November 1987, she was hired by Post Perfect as an art director, without administrative duties. Our review of the record indicates that, while employed by MTI, Ms. Scabrini also served as a designer.

As mentioned *supra,* there were restrictive covenants in both Mr. Zimmerman's and Ms. Scabrini's MTI contracts. Our examination of those restrictive covenants indicates both covenants are identical. In substance, the covenants, which contain no geographical limitations, seek to bar both of these employees, for a one-year period after leaving MTI, from divulging trade secrets or doing business with any firm that is or was a customer of MTI, or whose identity they learned as a result of employment by MTI, and from performing any services competitive with the services performed by MTI for such customers.

By service of a summons and complaint, in December 1987, MTI (plaintiff) commenced an action against defendants Mr. Zimmerman, Ms. Scabrini, Ms. Ilene Nelson (Ms. Nelson), who was another MTI employee hired by Post Perfect, Post Perfect, and Gordon. In substance, the MTI complaint alleges that Mr. Zimmerman and Ms. Scabrini breached their restrictive covenants, all three individual defendants (Mr. Zimmerman, Ms. Scabrini, and Ms. Nelson) breached their fiduciary duties to MTI and unfairly competed with MTI by soliciting MTI clients on behalf of Post Perfect, while still employed by MTI, and corporate defendants Post Perfect and Gordon induced Mr. Zimmerman and Ms. Scabrini to breach their contracts with MTI. The relief sought by MTI includes a preliminary and permanent injunction against all the defendants, men-

tioned *supra,* an accounting by all the defendants concerning the profits obtained by them, as a result of soliciting plaintiff's clients, compensatory and punitive damages from all defendants for their unlawful acts, and from the individual defendants, a return of all compensation paid to them by plaintiff during their period of disloyalty.

Simultaneously, with the commencement of the action, plaintiff moved, by order to show cause, for a preliminary injunction, or, in the alternative, expedited discovery. In response, the defendants cross-moved to dismiss MTI claims for breach and inducing breach of the contracts of Mr. Zimmerman and Ms. Scabrini. The IAS court disposed of the matter by order which, *inter alia,* granted plaintiff's motion for a preliminary injunction to the extent of enjoining Mr. Zimmerman and Ms. Scabrini from performing any services competitive to plaintiff's, for any person, firm or corporation which was a customer of plaintiff's Compugraph division, and from soliciting any such customer for their present employer.

Our examination of the record indicates that in this highly specialized field of video production, every firm involved in similar services promotes itself by publicizing its work and clients. Therefore, the names of many of plaintiff's clients have been disclosed by plaintiff's own articles and press releases describing its work. For example, plaintiff has publicly acknowledged that its clients include CBS Evening News, ABC, WPIX, WNYC-TV, ESPN, USA Network, Lifetime Cable Network, Channel 61, HBO, Nickelodeon, IBM, AT&T, Cinemax, and The Sports Channel.

While public policy does not absolutely preclude enforcement of restrictive covenants regulating future employment *(Matter of Sprinzen [Nomberg],* 46 NY2d 623, 631 [1979]), it will often militate against enforcement of unrestrained restrictive covenants *(Columbia Ribbon & Carbon Mfg. Corp. v A-1-A Corp.,* 42 NY2d 496, 499 [1977]).

The Court of Appeals in *Reed, Roberts Assocs. v Strauman* (40 NY2d 303, 307-308 [1976]) stated

"a restrictive covenant will only be subject to specific enforcement to the extent that it is reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee * * *

"Thus restrictive covenants will be enforceable to the extent necessary to prevent the disclosure or use of trade secrets or confidential customer information * * * In addition injunctive

relief may be available where an employee's services are unique or extraordinary and the covenant is reasonable."

We find that the IAS court erred in granting a preliminary injunction, since based upon our review of the record, we find no convincing evidence that either Mr. Zimmerman's or Ms. Scabrini's skills are unique, or that either one of them has divulged any trade secrets, or confidential customer lists of plaintiff to their present employer, defendant Post Perfect.

The equipment that the defendants utilize is readily available on the open market. There is no evidence that the techniques employed are secret. In fact, the plaintiff apparently is primarily interested in protecting what plaintiff refers to as its "investment" in its clients.

In addition, the respondent has failed to show that it would sustain irreparable damage if a temporary injunction is denied (see, De Candido v Young Stars, 10 AD2d 922 [1st Dept 1960]; Armbruster v Gipp, 103 AD2d 1014 [1984], in which the Fourth Dept cites De Candido v Young Stars, supra, with approval). If, in fact, respondent does prove that the defendants engaged in unfair trade practices, monetary damages could be calculated without great difficulty (see, Lehman v Piontkowski, 74 AD2d 841, 842 [1980]).

Accordingly, we modify the IAS court order to the extent of denying the plaintiff's motion for a preliminary injunction, and vacate it. Concur—Sandler, J. P., Ross, Carro and Milonas, JJ.