RIEDMAN CORPORATION et al., Appellants, v ROBERT D. GALLAGER et al., Respondents. [852 NYS2d 510]—

Appeal from an order of the Supreme Court, Onondaga County (James P. Murphy, J.), entered October 4, 2006 in a breach of contract action. The order granted defendants' motion for, inter alia, summary judgment dismissing the amended complaint.

It is hereby ordered that the order so appealed from is unanimously affirmed without costs.

Memorandum: Plaintiffs commenced this action seeking damages arising from the alleged breach of the employment agreement between Robert D. Gallager (defendant) and plaintiff Riedman Corporation (Riedman) and the agreement between defendant, Riedman, and defendant's former employer, Haylor, Freyer & Coon (HFC) (HFC agreement). The employment agreement provided that defendant would use confidential customer information only in furtherance of his employment with Riedman and that he would refrain from soliciting or accepting insurance or bond business from any Riedman customers for two years after his employment was terminated. Pursuant to the HFC agreement, Riedman paid HFC $250,000 to release defendant from his prior employment agreement with HFC and allegedly purchased certain of defendant's accounts from HFC. Defendant continued to serve any customers who chose to follow him from HFC to Riedman and, through his own efforts, he also acquired new customers while employed by Riedman. When Riedman sold all of its assets to plaintiff Brown & Brown, Inc. (Brown & Brown), defendant declined the offer of a position with Brown & Brown and accepted a position with defendant

Hatch-Leonard/Markin Shaw, Inc. (Hatch-Leonard). Defendant began to transfer the accounts in his business book from Riedman to Hatch-Leonard, including accounts that were allegedly purchased by Riedman pursuant to the HFC agreement and accounts that defendant acquired during his employment with Riedman. Defendants moved for, inter alia, summary judgment dismissing the amended complaint, and Supreme Court granted the motion. We affirm.

Generally, an employment agreement not to compete will be enforced to the extent that "it is reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee" (*Reed, Roberts Assoc. v Strauman*, 40 NY2d 303, 307 [1976], *rearg denied* 40 NY2d 918 [1976]; *see BDO Seidman v Hirshberg*, 93 NY2d 382, 389 [1999]). The protection of an employer's legitimate interests is limited to the protection of an employer's trade secrets or confidential customer lists, or protection from an employee whose services are unique or extraordinary (*see BDO Seidman*, 93 NY2d at 389; *Reed, Roberts Assoc.*, 40 NY2d at 308; *Independent Health Assn. v Murray*, 233 AD2d 883 [1996]).

Here, although defendant was knowledgeable and experienced, his services as an insurance agent were not unique or extraordinary (*see Brewster-Allen-Wichert, Inc. v Kiepler*, 131 AD2d 620 [1987]; *Reidman Agency v Musnicki*, 79 AD2d 1094 [1981]; *see also Briskin v All Seasons Servs.*, 206 AD2d 906 [1994]), and we thus conclude that defendants established their entitlement to judgment as a matter of law. In opposition to the motion, plaintiffs failed to raise a triable issue of fact whether defendant used any confidential information or trade secrets in his alleged violation of the employment agreement. Defendant testified at his deposition that, upon leaving Riedman, he did not take with him any materials, records or confidential information relating to his work at Riedman. Defendant further testified that he located customers through public sources such as telephone books, trade publications, referrals and social contacts. Customer lists that are readily discoverable through public sources are not considered to be confidential (*see Reed, Roberts Assoc.*, 40 NY2d at 308; *see also Cool Insuring Agency v Rogers*, 125 AD2d 758, 759 [1986], *lv dismissed* 69 NY2d 1037 [1987]).

Further, plaintiffs have no legitimate interest in preventing defendant from competing with them because they did not purchase the goodwill of either HFC or defendant pursuant to the HFC agreement and they did not subsidize or otherwise financially support the goodwill that defendant created with his

customers. Neither the HFC agreement nor any of the documents relating to it refers to the purchase of assets from HFC, such as customer accounts, customer lists or goodwill. Where, as here, a written agreement is unambiguous on its face, it should be interpreted in accordance with the plain meaning of its terms (*see Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]). Although the intended transfer of goodwill may be established by circumstances surrounding the sale, such as the purchase price or the inclusion of express noncompete covenants (*see Mohawk Maintenance Co. v Kessler*, 52 NY2d 276, 286-287 [1981]), plaintiffs have not presented any evidence of such circumstances in this case. With respect to defendant's own good will, plaintiffs failed to contradict the testimony of defendant that he created and maintained goodwill with his customers through his independent efforts, without suggestion or instruction from Riedman. "[I]t would be unreasonable to extend the covenant to personal clients of defendant who came to the firm solely to avail themselves of his services and only as a result of his own independent recruitment efforts, which [plaintiffs] neither subsidized nor otherwise financially supported as part of a program of client development. Because the goodwill of those clients was not acquired through the expenditure of [plaintiffs'] resources, [plaintiffs have] no legitimate interest in preventing defendant from competing for their patronage" (*BDO Seidman*, 93 NY2d at 393). Present—Gorski, J.P., Martoche, Centra and Green, JJ.